[Civ. No. 27278.   Second Dist., Div. Two.   Feb. 24, 1965.]

GLENDALE UNIFIED SCHOOL DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Respondent, v. VISTA DEL ROSSMOYNE CO. et al., Defendants and Appellants.

494

Freda B. Walbrecht for Defendants and Appellants.

Harold W. Kennedy, County Counsel, and Alfred Charles De Flon, Deputy County Counsel, for Plaintiff and Respondent.

HERNDON, J.—Defendants appeal from the judgment in condemnation entered following the verdict of the jury which awarded them $350,000 for the taking by plaintiff of approximately 69.2 acres of land.

Appellants make three assignments of error as the basis for urging a reversal of the instant judgment. They contend (1) that the date of valuation should have been the date of trial rather than the date the summons issued; (2) that the zoning ordinances of the City of Glendale which had placed their property into an R-1 zone are invalid; and (3) that the jury erroneously disregarded appellants' evidence as to the valuation of some unspecified portion of their property which the jury, by special verdict, had held to be subject to a reason-

able probability of zone variance. We have considered each of these contentions and find them to be clearly untenable.

A brief statement will suffice to indicate the basis upon which appellants predicate their first contention. Appellants initially were represented herein by the law firm of Hansen & Dolle and Attorney Harold B. Cooper. The summons in this case had issued on April 14, 1961, and therefore such date would have been the date of valuation unless the case were not tried within one year. In that event, the valuation date would be the date of the trial "unless the delay [was] caused by the defendant[s]." (Code Civ. Proc., § 1249.) Following several continuances, the matter came on for trial on March 2, 1962. On that date Mr. Hansen, speaking for the firm of Hansen & Dolle, stated to the court that he had been insulted by his clients and requested to be relieved. This request was granted and the trial of the case was continued to May 31, 1962. Trial was commenced on June 6, 1962, with the appellants being then represented by their former attorney, Harold B. Cooper, and the firm of Demetriou & Del Guercio. In the trial that followed, appellants, their counsel and their witnesses all designated and accepted April 14, 1961, as the correct valuation date and requested an instruction by the court so specifying.

Following the entry of judgment, a notice of appeal was filed on October 9, 1962, by appellants' present counsel, Freda B. Walbrecht. Thereafter, on July 9, 1963, a year after completion of the trial herein, appellants' present counsel filed a notice of motion seeking to correct the minute order which was made and entered upon the hearing of March 2, 1962, above mentioned so that said order would indicate that the continuance thereby granted had not been "on the motion of defendant" as previously indicated. Following a hearing held thereon, the court purported to correct its minute order to read as follows: "a) The date of valuation to remain the same to wit, the date of the issuance of Summons on April 14, 1961. b) On Court's own motion cause ordered continued to May 31, 1962 at 9:00 a.m. . . . . d) That said continuance was not found due to the fault of the defendants and the defendants were not charged with delaying the action as is referred to in Section 1249 of the [Code of Civil Procedure]. . . ."

As the result of this "correction," appellants now assert that they should be entitled to a retrial of the action with June 6, 1962, designated as the valuation date. This conten-

tion is so patently unreasonable that we need not even consider the subsidiary issues which underlie it, i.e., (1) whether such a ''correction'' was an appropriate *nunc pro tunc* order; and (2) whether the trial court's later statement that by its earlier order ''said continuance was not found due to the fault of defendants and the defendants were not charged with delaying the action as is referred to in Section 1249,'' would prevent us from holding, despite the lack of such a ''finding'' or ''charge'' on the part of the trial court, that the continuance granted herein should be deemed ''caused by'' appellants. (Cf. *People* v. *Murata,* 55 Cal.2d 1, 8-9 [9 Cal.Rptr. 601, 357 P.2d 833].)

We may accept as conceded the fact that if appellants' trial counsel, one of whom had been their attorney of record throughout the entire proceeding, had sought at the time of trial to establish a later valuation date, his position would have been properly sustained. Appellants presumably knew, and their trial counsel certainly should have known, every element necessary to require designation of the later date. They will not now be heard to *speculate* through counsel newly retained to prosecute their appeal that *perhaps* their trial counsel was misled by the court's original minute order and for that reason tried the case, laboring under an erroneous conception. (Cf. *City of Los Angeles* v. *Tower,* 90 Cal.App. 2d 869 [204 P.2d 395], wherein the condemnees objected to the use of the trial date, rather than an earlier date, as the valuation date upon the claim that their property had decreased in value in the interim.)

■ ''It is a general rule of appellate review, early established and long adhered to, that questions not raised in the trial court will not be considered on appeal. ■ This doctrine has been extended to provide that one may not raise a question on appeal where he has assented to or recognized the validity of the matter or proceeding in the court below, unless fundamental error is involved. The rule is founded upon considerations of practical necessity in the orderly administration of the law and of fairness to the court and the opposite party, and upon the principles underlying the doctrines of waiver and estoppel.'' (3 Cal.Jur.2d, Appeal and Error, § 140, p. 604.) ■ ''As a corollary to the rule that questions not raised in the trial court will not be considered on appeal, a party cannot, after trying a case on a well-defined theory accepted by all the parties and the court, raise for the

first time in the appellate court the question of the correctness of that theory." (3 Cal.Jur.2d, Appeal and Error, § 142, p. 607.)

Our conclusion that these well-established rules should be followed in the instant case is further strengthened by the fact that appellants' only showing of prejudice is based upon allegations which go outside the record and relate to events which occurred *after the date of the trial itself*. Since these matters would have been unavailable to appellant at the time of trial, regardless of the proper valuation date, they wholly fail to establish that appellants were prejudiced herein.

The lack of merit in appellants' second contention is even more apparent. On January 12, 1922, the city council adopted an ordinance which provided that the city would be divided into certain industrial and commercial districts and that all territory not lying within these districts was "declared to comprise the Residential District of said city." This ordinance further provided:

"The City Council has so far not been able to make a comprehensive study of all of that portion of the city lying within said Residential District, and therefore does not establish or create any district or districts within said Residential District prescribing the class of buildings, structures or improvements which may or may not be erected, constructed, altered or enlarged within said Residential District. *Proceedings may be instituted, however, for the establishment or setting apart of any of the territory within said Residential District as a First Class Residential District in the following manner. . . .*" (Italics added.)

Thereafter, and in fulfillment of the terms of the original zoning ordinance, various areas of the city were established as "First Class Residential Districts." Ordinance No. 1399, enacted in 1929, placed a portion of the subject property in such district. Ordinance No. 1868, adopted in 1941, placed the balance of the subject property in a similar district. In 1955, all the various ordinances were codified, and apparently all the citizens of the city have accepted the validity of these ordinances throughout the years. Nevertheless, appellants now challenge their validity upon the sole ground that article 6, section 8 of the city charter provides: "No ordinance shall be amended by reference to its title, but the sections thereof to be amended shall be re-enacted at length as amended; and any amendment passed contrary to the provision of this sec-

tion shall be void.'' They make the startling argument that the later ordinances, all enacted consistently and in accordance with the terms of the original ordinance, constituted ''amendments'' thereto, and, since they did not in express terms *reenact* the original ordinance itself at length, they are void.

Such an obviously untenable contention warrants no lengthy discussion. The subsequent creation of the ''First Class Residential Districts'' in the manner provided for by the original ordinance did not constitute ''amendments'' either in the logical or in the pragmatic sense of the word; hence no repetition of the original empowering ordinance was required.

Secondly, article 6, section 8 of the city charter is substantially equivalent to article IV, section 24 of the California Constitution which provides in part: ''. . . No law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be reenacted and published at length as revised or amended; . . .''

The clear purpose of both these provisions is to avoid the confusion which almost always results when amendments are attempted by way of directing the insertion, omission or substitution of certain words, or by adding a provision, without setting out the entire context of the section to be amended, and therefore have no application to self-sufficient and complete legislative pronouncements, even if they might be said to ''amend'' other earlier acts by implication. (*People* v. *Western Fruit Growers*, 22 Cal.2d 494, 500-501 [140 P.2d 13]; *Harris* v. *Fitting*, 9 Cal.2d 117, 120 [69 P.2d 833]; *Evans* v. *Superior Court*, 215 Cal. 58, 65 [8 P.2d 467]; *Hellman* v. *Shoulters*, 114 Cal. 136, 152-153 [44 P. 915, 45 P. 1057]; *Fletcher* v. *Prather*, 102 Cal. 413, 418-419 [36 P. 658].)

Appellants' final assignment of error is founded upon the jury's answer to one of two special interrogatories. They replied in the negative to an interrogatory concerning the reasonable probability of a zone change on any portion of the subject property, but answered the following interrogatory in the affirmative: ''As of the date of value, April 14, 1961, was there a reasonable probability of a zone variance in the near future from R-1 use to a multiple family residential use on the subject property *or any portion thereof*?'' (Italics added.)

From this starting point, appellants argue that since respondent's expert witnesses had testified that they did not believe any zone change or zone variance was reasonably

probable, the jury must have rejected these opinions and accepted those of appellants' experts who testified that such change or variance was possible. Therefore, they argue, the jury was bound as a matter of law also to accept exactly the valuation indicated by the opinions given by their experts as to the total value of the subject land, since respondent's experts had not testified to opinions as to value based upon any portion of the land being reasonably subject to a zone change or zone variance.

Several errors in this line of reasoning are ·immediately apparent. First, the opinions of appellants' experts were not accepted completely, since they had indicated their belief that *both* a zone change and a zone variance were reasonably probable in the near future. Secondly, their overall estimates of value were based upon their belief that a *specified number of acres* of the subject property was reasonably subject to zone change or zone variance. The jury's determination that some undelineated portion of the property was subject to zone variance is no indication that they accepted the specific acreage estimates suggested by appellants' witnesses and therefore would not be "inconsistent with the general verdict" in any event. (Code Civ. Proc., § 625.)

Lastly, although respondent's experts did not express opinions as to what the acreage value of the property would be if it were reasonably subject to a zone variance in the near future, it does not follow that the jury was bound as a matter of law to accept the lowest figure given by appellants' experts on this question. (*Los Angeles County Flood etc. Dist.* v. *McNulty,* 59 Cal.2d 333, 338 [29 Cal.Rptr. 13, 379 P.2d 493]; *Los Angeles City High School Dist.* v. *Swensen,* 226 Cal.App.2d 574, 580-581 [58 Cal.Rptr. 214].)

Although appellants' experts testified that in their opinion those acres in the subject property that were reasonably subject to zone change or zone variance were worth $9,000 or $10,000 per acre more than those which were not subject to such change, there was substantial evidence in the record to warrant the jury in determining that the increased value in the eyes of a prospective purchaser would be substantially less than this figure—although greater than the $.00 which, in effect, constituted the belief of respondent's experts. Respondent's experts testified that in their respective opinions, the value of the property to a prospective purchaser would be $263,000 or $259,000, and that such purchaser would not

consider either a zone change or zone variance as reasonably probable in the near future.

Appellants' experts testified that in their respective opinions, the value of the property to a prospective purchaser would be $680,000 or $650,000, and that in arriving at this evaluation such purchaser would apply a specified additional value to those indicated number of acres that were reasonably subject to zone change or zone variance in the future. The jury's verdict of $350,000 is clearly within the proper limits established by these conflicting expert opinions.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied March 25, 1965, and appellants' petition for a hearing by the Supreme Court was denied April 21, 1965.