[Civ. No. 12574. Fourth Dist., Div. One. Dec. 21, 1973.]

LA VAUGH ZITO, as Administratrix, etc., Plaintiff and Appellant, v. FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JER-SEY et al., Defendants and Respondents.

**COUNSEL**

Stanley W. Legro and William C. Pate for Plaintiff and Appellant.

Higgs, Fletcher & Mack, Vincent E. Whelan and Donald H. Glaser for Defendants and Respondents.

**OPINION**

**AULT, J.**—On April 9, 1970, Alfred James Zito, while driving a large rented truck in the operation of his own business, was involved in a serious multi-vehicle accident. The truck left the highway and struck and knocked over some gas pumps, causing an explosion and fire. Zito died from injuries received in the accident, several other people were seriously

injured and substantial property was damaged. Three lawsuits for damages are pending.

Plaintiff LaVaugh Zito, as administratrix of Alfred's estate, brought this action in declaratory relief seeking a determination that a policy of insurance issued by Firemen's Insurance Company of Newark afforded liability coverage for claims and lawsuits arising out of the accident. Firemen's is a subsidiary of defendant Continental Corporation. The trial court concluded there was no coverage and gave judgment for defendants. The plaintiff has appealed.

## FACTS

The facts are not disputed. Alfred James Zito was the sole owner of a small food processing business known as Liroll, Inc. Early in 1968 Aetna Insurance Company issued a policy of automobile liability insurance to Zito and his business, covering his Chevrolet coupe and his Dodge Sportsman van. Later in the year Aetna canceled the insurance because of Zito's poor driving record. Floyd Streeter, the insurance agent who handled all of Zito's insurance, then had Zito apply for insurance from Manhattan Fire and Marine Insurance Company. In discussing the problem with Zito and advising him of the options which were open, Streeter informed Zito that a general comprehensive business policy would cost him substantially more than a family automobile insurance policy because of his driving record. Zito decided upon the cheaper policy, saying: "I don't have lots of money. I don't need these coverages right now."

On October 23, 1968, Manhattan issued a 25/50 (thousand dollar) "Combination Automøbile Policy" to Zito and Liroll, Inc. as named insureds, insuring the same two vehicles for both business and pleasure uses. The policy included an endorsement with amended Exclusions (g) and (h) so that "with respect only to an automobile which is principally garaged or principally used in the state of California" the policy did not apply: "(g) . . . to an automobile while maintained or used by any person while such person is employed or otherwise engaged in the automobile business . . . ; (h) . . . to a *non-owned* automobile while maintained or used by any person while such person is employed or otherwise engaged in *any other business* or occupation of *the insured,* but this exclusion does not apply to a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant or to a trailer used therewith or with an owned automobile." (Italics added.) (Exh. 4.)

By the time the Manhattan policy came up for renewal in October 1969, Manhattan had been purchased by defendant Continental, which also owns Firemen's. Mr. Streeter requested Continental to renew Zito's policy "as is."

In response to this request but without having received any written application from Zito or Streeter, Continental issued a policy on Firemen's form instead of on the Manhattan form. The relevant exclusions in the Firemen's policy provided the policy did not apply: "(g) to an owned automobile while used by any person while . . . engaged in the automobile business, . . . ; (h) to a *non-owned* automobile while maintained or used by any person while such person is employed or otherwise engaged in (1) the automobile business of the insured or of any other person or organization, (2) *any other business* or occupation *of the insured,* but this exclusion (h) (2) does not apply to a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant or a trailer used therewith or with an owned automobile." (Italics added.) (Exh. 2.)

When the Firemen's policy arrived, Streeter delivered it to Zito. Several months later, in either December 1969 or January 1970, Zito told Streeter that he sometimes rented a large truck to pick up large quantities of salt for use in his business. Streeter then told Zito that there was no nonowned auto coverage in his policy. Zito told Streeter not to worry because he always bought insurance at the time he rented the truck. Zito declined Streeter's offer to add such coverage to the policy, saying: "I don't need it, Floyd. I am all right."

On April 9, 1970, Zito rented a large Ford truck from Acme Truck Rental to use for transporting supplies for his business. At the same time he purchased a 15/30 (thousand dollar) liability insurance policy from Acme to protect himself and his business while using the truck. Zito, while driving the truck back to his place of business, became involved in the multi-car accident in which he died and in which other persons were injured.

The declaratory relief action was tried in the superior court on the theory that the only issue before the court was whether the Firemen's policy provided coverage in view of Exclusion (h). Plaintiff's counsel argued the exclusion applied only to use of a nonowned vehicle driven by a *third* person while engaged in the business of the insured. The only witness who testified was insurance agent Streeter. The Firemen's policy and the

Manhattan policy were received into evidence as exhibits. From the fact the Firemen's policy contained the exclusion quoted above, and from the evidence introduced at the trial, the court concluded the Firemen's policy did not provide liability insurance coverage for the rented truck.

## CONTENTIONS

On appeal plaintiff contends:

1. The Manhattan form provided coverage for the accident and, therefore, the renewal on the Firemen's form must also provide coverage.

2. Assuming arguendo that Firemen's form is controlling, Exclusion (h) should not be applied to exclude coverage on the facts of this case.

## DISCUSSION

Plaintiff's claim on appeal that the exclusions contained in the amended endorsement of the Manhattan policy apply is a complete switch from the position she asserted in the trial court. There her attorney completely overlooked the endorsement in the Manhattan policy which amended the exclusion provisions, erroneously took the position that the exclusion provisions of the Manhattan and the Firemen's policies were identical and argued that Exclusion (h) of the Firemen's policy, in effect at the time of the accident, did not exclude coverage for the rented truck.

Apparently finding amended Exclusion (h) in the Manhattan policy more susceptible to the claim of ambiguity than the similar exclusion contained in the Firemen's policy, appellant's initial argument takes the following tack: (1) Amended Exclusion (h) of the Manhattan policy does not exclude coverage where the *insured* was driving a rented truck while engaged in his own business which is named in the policy. The phrase "in any other business . . . of the insured" found in amended (h) is ambiguous. The words "any other business" could refer either to some *unnamed* business of the insured or to the *automobile* business specifically mentioned in the preceding Exclusion (g). (2) Since ambiguity in an exclusion must be construed against the insurer the Manhattan policy must be held to have provided coverage. (See *Harris* v. *Glens Falls Ins. Co.*, 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861]; *State Farm Mut. Auto Ins. Co.* v. *Jacober*, 10 Cal.3d 193, 201 [110 Cal.Rptr. 1, 514 P.2d 953].) (3) Since an insurer, when renewing a policy, may not change the terms of the policy without first notifying the insured (*Industrial Indem. Co.* v. *Ind. Acc. Com.*, 34 Cal.2d 500, 506 [211 P.2d 857]), the more restrictive terms in the Firemen's policy would not be effective as a renewal.

Generally speaking a party may not raise new issues or argue theories for recovery on appeal when such issues and theories were not presented to the trial court. (*Glendale Unified School Dist.* v. *Vista del Rossmoyne Co.*, 232 Cal.App.2d 493, 496-497 [42 Cal.Rptr. 899].) Despite the fact the trial court was never asked to consider the amended endorsement in the Manhattan policy, by pleading or otherwise, and despite the fact plaintiff asserted that the Firemen's policy was controlling in the trial court, she seeks to obviate the general rule by asserting an exception which permits raising a new theory on appeal where such theory merely presents a new question of law (see *Panopulos* v. *Maderis*, 47 Cal.2d 337, 341 [303 P.2d 738]; *Bayside Timber Co.* v. *Board of Supervisors*, 20 Cal.App. 3d 1, 4 [97 Cal.Rptr. 431]; *Desny* v. *Wilder*, 46 Cal.2d 715, 729 [299 P.2d 257]).

It is apparent, however, the trial court did not arrive at its ultimate conclusion that there was no insurance coverage on the rented truck based upon its construction of the Firemen's policy alone. The findings demonstrate the court also considered Streeter's testimony of conversations had with Zito about insurance coverage and Zito's conduct in purchasing liability insurance coverage whenever he rented a truck to use in his business.[1]

Had the trial court been asked to interpret the amended endorsement of the Manhattan policy in the light of this evidence, it is reasonable to assume that its decision would have been no different. However, we need not speculate. We adhere to the well-established rule that " 'a party cannot, after trying a case on a well-defined theory accepted by all the parties and the court, raise for the first time in the appellate court the question of the correctness of that theory.' " (*Glendale Unified School Dist.* v. *Vista del Rossmoyne Co.*, supra, 232 Cal.App.2d 493, 496-497.)

---

[1]The relevant findings are Nos. 7, 8 and 9 and read as follows:

"7. That Alfred J. Zito, on April 9, 1970, was operating a Ford truck he rented from Acme Truck Rental and at the time he rented said truck he purchased an automobile liability insurance policy from Acme Truck Rental to insure himself and Liroll, Inc. from liability arising while he operated said vehicle.

"8. That on several occasions prior to April 9, 1970, and October 26, 1969, Alfred J. Zito rented trucks that were used in the business and occupation of Liroll, Inc. and Alfred J. Zito, and at said times purchased automobile liability insurance from said rental companies to insure himself and Liroll, Inc. for liability arising out of its operation while he operated said vehicles.

"9. That in or about December, 1969, Floyd G. Streeter advised Alfred J. Zito that said Firemen's Insurance Company of Newark policy did not afford liability coverage to non-owned trucks operated in the business or occupation of Liroll, Inc. or Alfred J. Zito and that Alfred J. Zito informed Floyd G. Streeter that he did not desire to purchase said coverage from Floyd G. Streeter because he purchased insurance to cover said risk from the truck rental companies at the times he rented a truck."

Turning to the exclusion provisions contained in the Firemen's policy, we first note that a similarly worded exclusion has been held to exclude coverage of a nonowned automobile used in the business of the insured. In considering such an exclusion, the court in *Jones* v. *Globe Indemnity Co.,* 305 F.Supp. 242, at page 248, said: "Globe and plaintiff have striven mightily to find ambiguities in this language to use against State Farm. They especially point to the phrase 'other business or occupation' in the second clause, claiming that it could or must mean other business than that of the insured and that therefore the business of the insured is not excluded. I think it crystal clear that 'other business' refers to other business than the automobile business which is covered by clause (1), and therefore the insured's own business *was* intended to be excluded from coverage under Insuring Agreement II. But if this is true, argues Globe, why have two separate clauses when all businesses could as easily be lumped into one? The answer to this is that the two-clause construction facilitates explanation of the exception for non-owned passenger vehicles driven by the insured or his family which exception does not apply to non-owned vehicles of any kind used in the automobile business."

Plaintiff seeks to distinguish clauses (g) and (h)(1) and (2) of the Firemen's policy from the exclusionary clauses under consideration in *Jones* by pointing to minor differences in language and grammar. If, however, these minor differences do affect the exclusionary language so that it is not "crystal clear" from the provisions themselves that liability coverage was not extended to the nonowned truck Zito rented and was using in his business at the time of the accident, the language still remains reasonably susceptible of that meaning, and the trial court was justified in relying upon extrinsic evidence in construing it (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 38-40 [69 Cal.Rptr. 561; 442 P.2d 641, 40 A.L.R.3d 1373]).

Insurance policies are to be interpreted in accordance with the rules which govern the construction of contracts generally. (Civ. Code, § 1635; *Ruffino* v. *Queen Ins. Co.,* 138 Cal.App. 528, 537-540 [33 P.2d 26].) So far as it is ascertainable, the policy provisions under consideration here must be interpreted to give effect to the mutual intention of the parties as it existed at the time they entered into the contract (Civ. Code, § 1636). While the language of the policy itself must govern its interpretation if it is clear and explicit (Civ. Code, § 1638), this rule does not obtain where the language itself is ambiguous or where evidence is produced to show the parties intended a meaning to which the language is reasonably susceptible. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co., supra,* 69 Cal.2d 33, 38-40.) "Acts of the parties, subsequent to

the execution of the contract and before any controversy has arisen as to its effect, may be looked to in determining the meaning. The conduct of the parties may be, in effect, a *practical construction* thereof, *for they are probably least likely to be mistaken as to the intent* [italics added]." (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 527, p. 449; *Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.2d 744, 752-753 [8 Cal.Rptr. 427, 356 P.2d 171].)

Zito confirmed his belief that the Firemen's policy did not afford liability coverage for the rented truck not just by words, but by purchasing special insurance to cover that contingency every time he rented the truck. Both by what he said in conversations with Streeter and by his conduct, Zito acknowledged the Firemen's policy was not intended to afford liability coverage when he rented a truck and used it in his business. Arguments against the drawing of such an inference are to no avail. Even if conflicting inferences might be drawn from Zito's statements and conduct, this court is bound by the inference drawn by the trial court as evidenced by the findings in support of the judgment (*Cottle* v. *Gibbon,* 200 Cal.App. 2d 1, 4 [19 Cal.Rptr. 82]).

Plaintiff further argues that Exclusion (h) should not be applied because it was intended to protect the insurer from risks greater than those assumed and that use of a rented truck did not increase the risk to the insurance company. The argument that use of a rented truck is analogous to use of a temporary substitute automobile is unpersuasive. The record on appeal includes photographs of the rented truck which was involved in the accident. It is a huge truck, in no way comparable to the automobile and small van which were listed in the policy. In any case, Zito's use of the rented truck left the Dodge van available for use by Zito's employees in his absence, and three vehicles could have been in use at the same time. If all were covered, the risk would be increased by 50 percent.

The judgment is affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.