[Civ. No. 38522. First Dist., Div. Two. May 31, 1977.]

WADE HOVER, Plaintiff and Appellant, v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Defendant and Respondent.

COUNSEL

Edward S. Miller for Plaintiff and Appellant.

Joseph C. Howard, Jr., for Defendant and Respondent.

OPINION

TAYLOR, P. J.—Wade Hover (hereafter Hover), an assignee of the insured Smith, appeals from an adverse judgment in an action to recover

a fire loss pursuant to an automatic open policy issued by the insurer, St. Paul Fire and Marine Insurance Company (hereafter St. Paul). Hover's major contentions are that: 1) St. Paul's policy No. 188JB6506 (hereafter No. 6506) afforded coverage for the loss in question; 2) the trial court erroneously admitted extrinsic evidence as to the meaning of the open cover agreement. We have concluded that there is no merit to either of these contentions and that the judgment must be affirmed.

The record indicates the following pertinent facts: Beginning July 1968, for a term of one year, and annually thereafter, the insured, a contractor, purchased for $25 coverage pursuant to an automatic open policy issued by St. Paul.

The insured renewed the policy in 1969, 1970 and 1971 through an independent insurance broker, Miller & Ames; in 1972, the insured renewed the policy through a new independent insurance broker, Johnson & Higgins. The terms and conditions of coverage under the automatic open policy were provided to St. Paul by Miller & Ames, the independent insurance broker employed by the insured to fulfil his needs as a contractor.

The court found that the purpose of the automatic open insurance policy was to give the insured interim insurance protection at all the insured's construction sites in California on jobs commencing within the policy period under the following conditions:

(a) The automatic open policy would offer the insured protection between the date construction at a specific jobsite commenced and the time specific insurance (course of construction insurance) covering the particular worksite and equipment could be obtained;

(b) The automatic open policy was to have a maximum effective period of 60 days for any one project;

(c) As soon as the insured was able to determine specific values, locations and other policy conditions at a particular jobsite, the insured was required to obtain specific policies to cover that jobsite;

(d) Coverage under the automatic open policy for a particular jobsite would begin with the commencement of construction on the jobsite and terminate when specific insurance was obtained or at the end of 60 days, whichever would come first.

In January 1972, the insured signed a general construction contract in excess of $133,000 with the City of Sunnyvale for the construction of a swimming pool at the Morse-Madrone School. Construction on that jobsite commenced between February 14 and February 24, 1972, and was still in progress at the time of the fire loss that occurred on August 5 or 6, 1972. At the same time, Smith executed an indemnity agreement with Hartford Accident and Indemnity Company (hereafter Hartford) in connection with Hartford's issuance of the performance bond for the school project. The indemnity agreement provided for an assignment of all insurance proceeds to Hartford.

St. Paul's automatic open fire policy No. 188JB9208 (hereafter No. 9208) had an effective policy period of July 27, 1971, to July 27, 1972. Coverage on the school project under this policy terminated 60 days after the commencement of construction at the jobsite. St. Paul's automatic open policy No. 6506 offered coverage for construction projects begun within its policy period, July 27, 1972, to July 27, 1973. Construction on the Morse-Madrone School Project did not commence within the policy period of policy No. 6506.

On February 10, 1973, the insured purported to assign to Hover all rights, if any, against St. Paul under policy No. 6506. Hartford obtained judgment against the insured in the United States District Court, Northern District of California, on March 10, 1975, in the amount of $26,390.80, the amount paid out by Hartford to complete construction at the Morse-Madrone School Project under its performance and labor and material bond. Hartford notified St. Paul in writing of the assignment on February 15, 1973, prior to any notice by Hover of a purported assignment to him of the same proceeds.

The court concluded, so far as pertinent, that: 1) fire coverage for the work on the Morse-Madrone School under St. Paul's policy No. 9208 expired 60 days after commencement of the work at that jobsite (e.g., April 24, 1972); 2) the 60-day period of coverage under policy No. 9208 expired before July 27, 1972, when policy No. 9208 expired; 3) the Morse-Madrone School Project was not covered under policy No. 6506, as construction commenced prior to the commencement of that policy on July 27, 1972; 4) accordingly, the loss occurring on August 5 or 6, 1972, was not a covered loss under policy No. 6506.

Hover first contends that the trial court's construction of the automatic open fire policy is contrary to the "unambiguous" language of the policy and constitutes a rewriting of its provisions. We cannot agree.

The pertinent policy provisions read as follows: "PROPERTY INSURED (A) BUILDINGS AND/OR STRUCTURES IN COURSE OF CONSTRUCTION OR RECONSTRUCTION, (B) MATERIALS, SUPPLIES, TOOLS AND EQUIPMENT USED OR TO BE USED IN THE CONSTRUCTION OR RECONSTRUCTION OF THE INSURED BUILDINGS AND/OR STRUCTURES.

"LIMITS OF LIABILITY AND LOCATIONS INSURED: THE LIABILITY OF THIS COMPANY UNDER THIS POLICY SHALL BE LIMITED TO AN AMOUNT NOT EXCEEDING $25,000.00 ON ANY ONE BUILDING AND $25,000.00 AT ANY ONE STOCKPILE OF SUPPLIES AND EQUIPMENT SET ASIDE FOR USE IN THE CONSTRUCTION AND/OR RECONSTRUCTION OF THE INSURED BUILDINGS AND/OR STRUCTURES ALL WHILE LOCATED:

"WITHIN THE STATE OF CALIFORNIA.

"EXCLUSIONS: (A) MOTOR VEHICLES LICENSED FOR HIGHWAY USE,

"(B) LANDSCAPING, TREES, SHRUBERY [*sic*],

"(C) ACCOUNTS, BILLS, EVIDENCES OF DEBT OR OWNERSHIP, MONEY, CURRENCY, NOTES, SECURITIES, OTHER DOCUMENTS.

"OPEN COVER AGREEMENT: IT IS THE INTENT AND PURPOSE OF THIS CONTRACT AND THIS COMPANY HEREBY AGREES TO KEEP THE INSURED COVERED FOR THE FULL SOUND VALUE OF THE PROPERTY HEREIN DESCRIBED SUBJECT TO ALL THE TERMS AND CONDITIONS OF THIS POLICY *Including* THE LIMIT OF LIABILITY AT ANY ONE LOCATION HEREIN SET FORTH, FOR A PERIOD OF 60 DAYS FROM THE TIME LIABILITY BECOMES EFFECTIVE UNDER THIS POLICY. THIS POLICY AS RESPECTS EACH LOCATION BECOMES EFFECTIVE IMMEDIATELY UPON THE COMMENCEMENT OF CONSTRUCTION AND SHALL CONTINUE IN FORCE UNTIL SPECIFIC COVERAGE IS ISSUED, BUT IN NO EVENT BEYOND THE TIME MORE SPECIFIC INSURANCE COVERING THE INTEREST OF THE INSURED HEREIN NAMED ATTACHES." (Emphasis added.)

We think the policy, with a clarity and particularity unusual in the industry, sets forth its interim purpose and nature. The open cover agreement indicates that liability is effective at each location for a period of 60 days upon the commencement of construction at each location. Hover attempts to argue that as a matter of law, the 60-day period

commenced on the date "liability becomes effective," namely, the date of the policy. Hence, he reasons that the open cover agreement provided coverage for the Morse-Madrone School Project, which was still in the course of construction on July 27, 1972, the date coverage commenced under policy No. 6208. Hover's argument might have merit if the second sentence of the open coverage agreement did not state that liability under the policy became effective *immediately upon the commencement of construction* or until specific coverage was obtained, whichever occurred sooner.[1]

■ We find it difficult to see any lack of clarity in the language of the policy. However, at most, any ambiguity or uncertainty could be ascribed only to the beginning of the 60-day period under the above quoted provisions. Thus, contrary to Hover's contention, the court did not err in admitting evidence as to the meaning of the policy (*Pacific Gas & E. Co. v. G. W. Thomas Drayage, etc. Co.,* 69 Cal.2d 33, 38-40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Zito v. Fireman's Ins. Co.,* 36 Cal.App.3d 277 [111 Cal.Rptr. 392]). Here, the testimony of both of the independent brokers who obtained the coverage for the insured support the result reached by the trial court. The policy was initially recommended to the insured as a "stop gap measure" to cover the materials on the jobsite in the period before there was sufficient material or commencement of construction for the insured to determine specific values and locations and obtain "course of construction" coverage.

The letter sent by the broker to the insured in June 1971 stated: "As you are aware, the policy provides $25,000 fire, extended coverage and vandalism and malicious mischief coverage at any one location pending issuance of a course of construction insurance on each specific job." Thus, the insured was aware of the interim nature of the policy that would provide coverage only until the specific course of construction policies were acquired for each site. It follows that Hover's contentions concerning the insufficiency of the evidence to support the findings is entirely without merit.

Hover, citing *Gray v. Zurich Insurance Co.,* 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168], further argues that the policy is to be construed in accord with the "reasonable expectations of the insured" as a layman

---

[1]The insured attempts to argue that each of the two sentences of the open coverage agreement provides for different coverage: the first for projects under construction at the commencement of the policy period and the second for projects commencing after the effective date of the policy.

(*Otter* v. *General Ins. Co.,* 34 Cal.App.3d 940, 949 [109 Cal.Rptr. 831]). It stretches the bounds of credibility to argue that the insured, an experienced and large-scale contractor, expected to receive for an annual premium of $25 fire and malicious mischief coverage to the policy limits of $25,000 for all of its projects in the state under construction at the time the policy commenced, as well as for all construction projects commenced during the policy period, despite the fact that the premium was determined without regard to the number or size of projects contemplated or under construction. The insured was aware of the cost of course of construction coverage and he did not obtain any such insurance for the Morse-Madrone School Project before the instant loss, as it was apparently not required.

■  We conclude that the trial court properly ruled that the insured's August 6, 1972, fire loss at the Morse-Madrone School was not covered by St. Paul's policy No. 6506. In view of this conclusion, it is not necessary to reach the issues pertaining to the validity of the assignment from the insured to Hover or the insured's assignment to Hartford; accordingly, Hover's motion to produce additional evidence is denied.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.