[No. S022929. June 25, 1992.]

WAYNE ICHIJA YOSHISATO, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Ronald Y. Butler, Public Defender, Carl C. Holmes, Chief Deputy Public Defender, Thomas Havlena and Kevin J. Phillips, Deputy Public Defenders, for Petitioner.

Fern M. Laethem, State Public Defender, Albert W. Brodie and Mary K. McComb, Deputy State Public Defenders, as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Michael R. Capizzi, District Attorney, Maurice L. Evans, Chief Assistant District Attorney, John D. Conley, Assistant District Attorney, Douglas Woodsmall, Gregg L. Prickett and Katheleen M. Harper, Deputy District Attorneys, for Real Party in Interest.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Robert M. Foster and Frederick R. Millar, Jr., Deputy Attorneys General, as Amici Curiae on behalf of Real Party in Interest.

OPINION

LUCAS, C. J.—In the June 1990 Primary Election, the voters approved two measures (Propositions 114 and 115), both of which amended Penal Code section 190.2 (hereafter section 190.2). Proposition 114 received more votes than Proposition 115, and is clearly operative. We granted review to decide whether, and to what extent, the amendments made to section 190.2 by Proposition 115 should be given effect. (See Cal. Const., art. II, § 10, subd. (b).) We conclude that all of the substantive amendments made to section 190.2 by Proposition 115 are effective.

## I. *Facts and Procedure*

Petitioner stands charged with first degree murder. The information alleges as a special circumstance—mandating a sentence of death or life in prison without possibility of parole if found true—that the murder was committed while petitioner was engaged in "rape with a foreign instrument." (See § 190.2, subd. (a)(17)(xi).)

Petitioner demurred to the allegation on the ground that rape with a foreign instrument—a new special circumstance added by Proposition

115—is not a valid special circumstance because Proposition 114 reenacted former section 190.2, subdivision (a)(17), without adding that special circumstance. The trial court overruled the demurrer, but the Court of Appeal reversed, concluding that our opinion in *Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744 [274 Cal.Rptr. 787, 799 P.2d 1220] (hereafter *Taxpayers*) precluded Proposition 115's amendments to section 190.2 from taking effect.

## II. *The Propositions*

### A. *Proposition 114*

In 1989, the Legislature passed and the Governor signed an omnibus bill designed to overhaul the classification and treatment of peace officers. The legislation, Senate Bill No. 353 (1989-1990) Reg. Sess.) (Stats. 1989, ch. 1165), amended, repealed, and added 52 sections of 13 different codes, and comprised over 46 pages of text. Section 16 of the legislation proposed to amend the "peace officer special circumstance" provision of the 1978 Death Penalty Initiative, but section 51 of the legislation provided that section 16 "shall become effective only when submitted to and approved by the voters, pursuant to subdivision (c) of Section 10 of Article II of the California Constitution."[1] Thereafter the "peace officer special circumstance" amendment of Senate Bill No. 353 was presented to the voters at the next general election as Proposition 114.

The "Official Title and Summary" of Proposition 114 read as follows: "MURDER OF A PEACE OFFICER. CRIMINAL PENALTIES. SPECIAL CIRCUMSTANCE. PEACE OFFICER DEFINITION. LEGISLATIVE INITIATIVE AMENDMENT. The Briggs Death Penalty Initiative Act defined 'peace officer' for cases where a defendant is found guilty of first degree murder and the victim was a peace officer. No changes have been made to this section since its enactment. The Legislature has reclassified peace officers by grouping them into different categories and has made other changes since 1979. *This statute conforms the definition found in the Initiative Act to the new classifications, thereby increasing the numbers and types of peace officers covered by the act. . . .*" (Ballot Pamp., Prop. 114, Primary Elec. (June 5, 1990) p. 28, italics added.)

The "Analysis by the Legislative Analyst," presented to the voters immediately after the above summary, explained that under the 1978 Death

---

[1] That subdivision provides, "The Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval."

Penalty Initiative, the murder of a peace officer in the performance of his or her duties is a "special circumstance" that qualifies the defendant for a sentence of death or life in prison without possibility of parole. (Ballot Pamp., analysis of Prop. 114 by Legislative Analyst, *supra*, p. 28.) It then stated: "Since 1978, there have been no changes to the Death Penalty Initiative. The Legislature, however, has amended the Penal Code. These amendments have resulted in some persons being deleted from, and other persons being added to, the definition of a peace officer. These persons include various employees of the state and local governments. [¶] **Proposal** [¶] By reference, this measure would incorporate the legislative changes in the definition of a peace officer into the provisions of the 1978 Death Penalty Initiative. As a result, this measure expands the number and types of peace officers the murder of whom would be a special circumstance under the 1978 Death Penalty Initiative. . . ." (*Ibid.*)

Thereafter the voters were presented with the "Text of the Proposed Law." An introductory paragraph stated: "This proposed law amends a section of the Penal Code; therefore, existing provisions proposed to be deleted are printed in ~~strikeout type~~ and new provisions proposed to be added are printed in *italic type* to indicate that they are new." (Ballot Pamp., Prop. 114, *supra*, p. 29.) Next, the voters were advised: "PROPOSED LAW [¶] . . . . Section 190.2 of the Penal Code is amended to read: . . ." (*Ibid.*) The full text of section 190.2, with the deletions and additions presented as indicated above, followed.

Almost all of the changes presented in Proposition 114 were nonsubstantive. Paragraphs (4), (6), (7), (8), (9), (10), (14), and (16), of subdivision (a) of section 190.2, and the first sentence of subdivision (b), were modified to add "gender neutral" language (e.g., "his" was replaced with "his *or her*"), and other minor syntactic (e.g., "such defendant" was changed to "*the* defendant"), grammatical, and punctuation changes were made. The sole substantive change appeared in paragraph (7) of subdivision (a), the "peace officer special circumstance" provision, which was presented to the voters for approval in amended form as follows: "The victim was a peace officer as defined in [Penal Code] Section 830.1, 830.2, 830.3, 830.31, *830.32* [school police], *830.33* [transportation police], *830.34* [utility security officers] 830.35, 830.36, *830.37* [fire investigators], 830.4, 830.5, ~~830.5a~~ [repealed by Stats. 1980, ch. 1340, § 14]~~,~~ 830.6, 830.10, 830.11 or 830.12, who, while engaged in the course of the performance of his *or her* duties was intentionally killed, and ~~such~~ *the* defendant knew or reasonably should have known that ~~such~~ *the* victim was a peace officer engaged in the performance of his *or her* duties; . . ." (Ballot Pamp., Prop. 114, *supra*, p. 29.)

The arguments of the proposition's proponents and opponents followed. The proponents asserted the measure "updates and clarifies provisions regarding murder of our peace officers." (Ballot Pamp., argument in favor of Prop. 114 as presented to the voters, *supra*, p. 30.) They explained, "In the years since the death penalty was enacted, new categories of peace officers have been created by the Legislature. Most of these are investigators whose pursuit of white collar criminals supplements the work of regular police and sheriffs. Some provide public safety services on special public lands. All are sworn to your service, and willingly face danger and hardship in the interests of law and order. [¶] Proposition 114 simply adds these new categories of peace officers to the list of those whose deaths can trigger a death penalty sentence for the perpetrator. . . . Your 'yes' vote will guarantee that no murderer of a peace officer will avoid the ultimate penalty solely because the [death penalty] law is not technically up to date. [¶] . . ." (*Ibid.*) The opponents responded that the expanded classification of peace officers was unnecessary.

### B. *Proposition 115*

In contrast to the narrow scope of Proposition 114, Proposition 115 was a wide-ranging measure designed to make "comprehensive reforms . . . to our criminal justice system." (Prop. 115, § 1(a); see *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 342-346 [276 Cal.Rptr. 326, 801 P.2d 1077] [summarizing the measure's various reforms].) The "Official Title and Summary" and the "Analysis by the Legislative Analyst" described for the voters the numerous constitutional and statutory changes proposed by the measure. (Ballot Pamp., Prop. 115, Primary Elec. (June 5, 1990) pp. 32-33.) The measure proposed six substantial constitutional changes concerning postindictment preliminary hearings, independent construction of state constitutional rights, the People's rights to due process and speedy trial, joinder and severance of cases, hearsay testimony at preliminary hearings, and "reciprocal" discovery procedures. (See Prop. 115, §§ (2)-(5).) The measure also proposed to repeal, amend, and add provisions to numerous statutes found in the Code of Civil Procedure (§§ 223, 223.5), the Evidence Code (§ 1203.1), and the Penal Code (§§ 189, *190*.2, 190.41, 190.5, 206, 206.1, 859, 866, 871.6, 872, 954.1, 987.05, 1049.5, 1050.1, 1054-1054.7, 1102.5, 1102.7, 1385.1, 1430, 1511). (See Prop. 115, §§ (6)-(28).)

The voters were presented with the full "Text of the Proposed Law." (Ballot Pamp., Prop. 115, *supra*, pp. 33, 65-69.) In an introductory paragraph, they were advised that the measure "amends the Constitution" and "amends, repeals, and adds sections to" various codes, including the Penal Code. (*Id.* at p. 33.) The actual text of the law followed in just under five

pages of fine print. The provisions of the law were divided into 30 sections. Section 10 began, "Section 190.2 of the Penal Code is amended to read: . . ." (*Id.* at p. 66.) The full text of section 190.2, with the deletions and additions highlighted, followed.

Some of the changes presented were nonsubstantive, and many of these mirrored the syntactic, grammatical, punctuation, and "genderneutral" changes made by Proposition 114. Proposition 115 proposed no substantive change to section 190.2, subdivision (a)(7), the "peace officer" special circumstance that was the focus of Proposition 114. A number of substantive changes were made, however, to other provisions of section 190.2:

1.  *Amendments to Section 190.2, Subdivision (a)*

(i)   The opening paragraph of subdivision (a) was amended to delete the requirement that special circumstances be "charged and specially" found; the revised version provides that a defendant convicted of first degree murder shall face the penalty of death, or life in prison without the possibility of parole, if "one or more of the following special circumstances has been ~~charged and specially~~ found under Section 190.4 to be true: . . ." (Ballot Pamp., Prop. 115, *supra*, p. 66.)

(ii)   Paragraph (10) (the "witness killing" special circumstance) was amended to apply to the intentional killing of a witness to prevent his or her "testimony in any criminal *or juvenile* proceeding . . . ." (Ballot Pamp., Prop. 115, *supra*, p. 66.)

(iii)   Paragraphs (11) and (12) (the "prosecutor murder" and "judge murder" special circumstances) were amended to apply only if the murder was "*intentionally* carried out in retaliation for or to prevent the performance of the victim's official duties." (Ballot Pamp., Prop. 115, *supra*, p. 66.)

(iv)   Paragraph (17) (the "felony murder" special circumstance) was amended to add two death-qualifying felonies: "(x) Mayhem in violation of Section 203" and "(xi) Rape by instrument in violation of Section 289."[2] (Ballot Pamp., Prop. 115, *supra*, p. 66.)

(v)   The last sentence of paragraph (18) (the "torture murder" special circumstance) was deleted. The revised section omits the requirement of

---

[2]The measure also revised and updated other subparts of paragraph (17) as follows: "(i) Robbery in violation of Section 211 or *215.5*. [¶] (ii) Kidnapping in violation of ~~Sections~~ *Section* 207 ~~and~~ *or* 209. . . . [¶] (viii) Arson in violation of *subdivision (b) of* Section ~~447~~ *451*."

"proof of infliction of extreme physical pain," and reads as follows: "The murder was intentional and involved the infliction of torture. ~~For the purpose of this section torture requires proof of the infliction of extreme physical pain mo matter how long its duration.~~" (Ballot Pamp., Prop. 115, *supra*, p. 66.)

### 2. *Amendments to Section 190.2, Subdivision (b)*

Former subdivision (b) of section 190.2 provided as follows: "Every person whether or not the actual killer found guilty of intentionally aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting, any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in paragraphs (1), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), (14), (15), (16), (17), (18), or (19) of subdivision (a) of this section has been charged and specially found under Section 190.4 to be true.[3] [¶] The penalty shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5." Proposition 115 made these changes:

(i)   It deleted the first sentence of former subdivision (b) (quoted above), and replaced it with the following: "Unless an intent to kill is specifically required under subdivision (a) for a special circumstance enumerated therein, an actual killer as to whom such special circumstance has been found to be true under Section 190.4 need not have had any intent to kill at the time of the commission of the offense which is the basis of the special circumstance in order to suffer death or confinement in state prison for a term of life without the possibility of parole."

(ii)   It added subdivision (c), as follows: "Every person not the actual killer who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in subdivision (a) of this section has been found true under Section 190.4."

(iii)   Finally, it added subdivision (d), as follows: "Notwithstanding subdivision (c), every person not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a), which felony results in the

---

[3]Proposition 114 changed the word "paragraphs" to "paragraph."

death of some person or persons, who is found guilty of murder in the first degree therefor, shall suffer death or confinement in state prison for life without the possibility of parole, in any case in which a special circumstance enumerated in paragraph (17) of subdivision (a) of this section has been found to be true under Section 190.4."[4]

The arguments of the proposition's proponents and opponents followed. The proponents asserted the constitutional and statutory changes were appropriate and necessary to protect crime victims and to prevent undue delay in the prosecution of crimes. The opponents responded that the sweeping changes proposed might unintentionally restrict the civil rights of law-abiding citizens. Neither the proponents nor the opponents focused expressly on the proposed changes to section 190.2, and neither drew the attention of the voters to the fact that another measure on the same ballot proposed to amend section 190.2.

## III.  *Discussion*

California Constitution, article II, section 10, subdivision (b) (hereafter section 10(b)), provides: "If provisions of two or more measures approved at the same election conflict, those of the measure receiving the highest affirmative vote shall prevail." In *Taxpayers, supra*, 51 Cal.3d 744, we applied this constitutional provision to a conflict between two *competing* initiatives, Propositions 68 and 73, both of which were designed to regulate political campaign contributions and spending by adding a new chapter to an existing statutory scheme. (See *id.*, at pp. 748-755 [describing the two proposed statutory schemes].)

We noted that the words used in section 10(b) could reasonably be understood to focus on *the individual provisions* that conflict, and that "the remaining (nonconflicting) provisions of the initiative or initiatives receiving the lesser affirmative vote are also operative if they are severable." (*Taxpayers, supra*, 51 Cal.3d at p. 765.) We explained, however, that this interpretation of the section was "not the only reasonable understanding," and that "[i]t can also be read to mean that when initiatives with provisions that are in fundamental conflict receive affirmative votes at the same election, only *the provisions of the measure* receiving the highest affirmative vote are operative." (*Ibid.*, italics added.)

We concluded the latter interpretation of the section applied when the measures at issue were presented to the voters as "competing" or "alternative" measures. Otherwise, we reasoned, courts would be placed in a position that could not have been intended by the drafters of section 10(b); they

---

[4]In addition, Proposition 115 created subdivision (e) (taken verbatim from the concluding sentence of former subd. (b)), which reads as follows: "The penalty shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5."

would be forced to "engraft onto one regulatory scheme provisions intended to be part of a different scheme," resulting in "a regulatory scheme created without any basis for ascertaining whether the electorate understood or intended the result." (*Taxpayers, supra,* 51 Cal.3d at p. 747.)

Our "bright line" interpretation of section 10(b) was thus motivated by "the analytical difficulty and practical impossibility of implementing the presumed, but in fact unknown, will of the electorate by judicially merging *competing* initiative regulatory schemes." (*Taxpayers, supra,* 51 Cal.3d at p. 764, italics added.) We held, "[w]hen *competing* initiatives are on the ballot, it is possible, if not probable, that many of the votes in favor of each measure were cast by the voters who cast votes against the alternative proposition. The arguments for and against the initiatives here asked the voters to do just that—to choose between the two measures. A construction of section 10(b) that invites judicial reconciliation of *competing* initiatives *in these circumstances* would lead as easily to thwarting the will of the electorate as to carrying it out." (*Id.,* at p. 769, italics added.)

■ No such logistical problem arises, however, in the case of measures that are presented to the voters as complementary or supplementary (i.e., noncompeting) measures. It follows that with regard to such measures, the most natural interpretation of section 10(b) is the one that we initially described in *Taxpayers, supra,* 51 Cal.3d at page 765: The measures should be compared "provision by provision,"[5] and the provisions of the measure receiving the lower number of affirmative votes are operative so long as they do not conflict with the provisions of the measure receiving the higher number of affirmative votes, and so long as those nonconflicting provisions are severable from any that do conflict.

■ ■ Accordingly, we must first determine whether the measures at issue here are "competing" as in *Taxpayers, supra,* 51 Cal.3d 744, and hence subject to the "bright line" interpretation of section 10(b), or whether the measures are complementary or supplementary, and hence subject to the more accommodating interpretation of section 10(b) applicable to such measures. In conducting this inquiry, we must bear in mind "our solemn duty jealously to guard the sovereign people's initiative power, 'it being one of the most precious rights of our democratic process.' [Citation.] Consistent with prior precedent, *we are required to resolve any reasonable doubts in favor of the exercise of this precious right.*" (*Brosnahan* v. *Brown* (1982) 32 Cal.3d 236, 241 [186 Cal.Rptr. 30, 651 P.2d 274], italics in original, quoting *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 248 [149 Cal.Rptr. 239, 583 P.2d 1281].)

---

[5]For this purpose, we construe "provision" to mean a paragraph (or a numbered subpart of a paragraph) of a measure.

■■■ Unlike the propositions involved in *Taxpayers, supra,* 51 Cal.3d 744, the propositions at issue here were not expressly or even impliedly presented to the voters as competing or alternative measures. Instead, as shown above, the materials presented to the voters in the ballot pamphlet indicated that both measures sought to amend section 190.2 in complementary or supplementary fashion.

We recognized in *Taxpayers, supra,* that the bright line interpretation of section 10(b) would also be appropriate in situations in which two measures sought to "create[] a comprehensive regulatory scheme related to the same subject . . . ." (*Taxpayers, supra,* 51 Cal.3d at p. 747; see also *id.* at p. 771, fn. 12.) In this regard, petitioner asserts the voters who enacted Proposition 114 were confronted with two competing "versions" of section 190.2. He suggests that in Proposition 114 the voters were offered a "package deal" that included affirming the status quo of all unamended provisions of section 190.2, while at the same time expanding the scope of the peace officer special circumstance. Similarly, he asserts, in Proposition 115 the voters were offered a "package deal" that included affirming the status quo of all unamended provisions of section 190.2, while at the same time making the various substantive changes set out above. Accordingly, petitioner reasons, because the propositions reenacted *two different versions* of section 190.2 (instead of merely amending selected paragraphs or numbered subparts thereof), the voters were in fact faced with two competing "comprehensive schemes," and thus under *Taxpayers, supra,* 51 Cal.3d 744, the scheme adopted by Proposition 114 is effective and none of the provisions of Proposition 115 relating to section 190.2 is effective.

Although this argument has some appeal, we conclude it assigns undue import to the technical procedures for amending statutes, and gives insufficient consideration to whether the voters who enacted Proposition 114 *intended* to adopt a comprehensive scheme that would prevail over any other measure enacted by a lesser affirmative vote at the same election. ■■■ "In construing . . . statutory provisions, whether enacted by the Legislature or by initiative, the intent of the enacting body is the paramount consideration. [Citations.] 'We are mindful that the goal of statutory construction is ascertainment of legislative intent so that the purpose of the law may be effectuated.' " (*In re Lance W.* (1985) 37 Cal.3d 873, 889 [210 Cal.Rptr. 631, 694 P.2d 744].)

■■■ Article IV, section 9 of the state Constitution *mandates* that "a section of a statute may not be amended unless the section is re-enacted as amended." The purpose of this section is to avoid the "confusion which almost always results when amendments are attempted by way of directing

the insertion, omission or substitution of certain words, or by adding a provision, without setting out the entire context of the section [of the statute] to be amended . . . ." (*Glendale Unified School Dist.* v. *Vista Del Rossmoyne Co.* (1965) 232 Cal.App.2d 493, 498 [42 Cal.Rptr. 899].) The *effect* of this section is that voters considering an initiative (like Proposition 114) that seeks to make discrete *amendments* to selected provisions of an existing statute, are forced to reenact the entire statute as amended in order to accomplish the desired amendments.[6] And yet, in light of the ballot materials quoted above (see *ante,* pp. 982-987; *Taxpayers, supra,* 51 Cal.3d at p. 749, fn. 5), it is clear that the voters *intended* merely to *amend* section 190.2 in the various discrete ways set out above.

The question, then, is this: What effect should be given the compelled "reenactment" of portions of a statute that the voters intended merely to "amend" in other respects? In other words, when a statute is "reenacted" under the compulsion of the Constitution, can that action reasonably be construed as a decision by the voters that the statute as reenacted should prevail over all provisions of any other measure appearing on the same ballot that seeks to amend those compulsorily reenacted provisions or to add new provisions? In the absence of any evidence in the ballot materials that the voters intended, much less considered, that result, we conclude the technical (and indeed, constitutionally compelled) reenactment of a statute that is amended by the voters does not, in and of itself, reflect intent of the voters to adopt a "comprehensive scheme" that would prevail over all other provisions of any other measure enacted by a lesser affirmative vote at the same election. Indeed, because the ballot materials demonstrate persuasively that the voters did not intend the preclusive result advanced by petitioner, we conclude that Proposition 114 did not create a "comprehensive scheme" that prevails over all other changes made to section 190.2 by Proposition 115.[7]

---

[6]The People, through the District Attorney of Orange County, appear to contend otherwise, based on their reading of Government Code section 9605. That section provides, inter alia, "Where a section or part of a statute is amended, it is not to be considered as having been repealed and reenacted in the amended form. The portions which are not altered are to be considered as having been the law from the time when they were enacted . . . ." From this, the District Attorney reasons that the unaltered parts of section 190.2 were not in fact "reenacted" by Proposition 114, but instead "simply remained the law as previously enacted." Contrary to the District Attorney's view, the quoted portion of the Government Code section does not purport to stand for the proposition that statutory amendments may be accomplished without reenacting the statute as amended, as required by article IV, section 9 of the Constitution. Instead, it merely establishes that the effective date for unaltered portions of an amended statute remains the date on which the original, unaltered enactment was first operative. (See *In re Lance W., supra,* 37 Cal.3d 873, 895 & fn. 18.)

[7]The Court of Appeal supported its contrary conclusion by noting the failure of two subsequent attempts to amend section 190.2. First, in November 1990, the voters declined to

■■■ We proceed under section 10(b) to compare *the amendments* enacted by the two measures "provision by provision." (See *ante*, p. 988, fn. 5.) Because Proposition 114 received more affirmative votes than Proposition 115, the amendment made by Proposition 114 to the peace officer special-circumstance provision (§ 190.2, subd. (a)(7)) is effective.[8] In addition, each amendment enacted by Proposition 115 must be given effect so long as the amendment does not conflict with any amendment made to the same provision by Proposition 114, and so long as the amendment is severable from any other provision of Proposition 115 that cannot be given effect.

Under this approach, the amendments made by Proposition 115 to those provisions that Proposition 114 simply reenacted without amendment of any kind are clearly operative. Accordingly, the deletion by Proposition 115 of the " 'charged and specially' found" requirement in the opening paragraph of section 190.2, subdivision (a) is effective. Similarly, the insertion by Proposition 115 of an intent requirement in section 190.2, subdivision (a)(11) and (12) is effective. Likewise, the various modifications and amendments made by Proposition 115 to paragraph (17) of section 190.2, subdivision (a)— including the addition of the mayhem provision (§ 190.2, subd. (a)(17)(x)) and the "rape by foreign instrument" provision at issue in this case (*id.*, subd. (a)(17)(xi))—are also effective.

---

pass Proposition 129, which would have incorporated the specific amendments to section 190.2 made by Propositions 114 and 115, but which would have also enacted substantial mandatory spending provisions (Prop. 129, § 4) and made other substantive changes inconsistent with other parts of Proposition 115 (e.g., Prop. 129, §§ 10 [voir dire], 29 [discovery]). Second, in May 1991, the Legislature failed to pass a proposed amendment to section 190.2 which would have expressly incorporated the changes made by Proposition 115 (Assem. Bill No. 96 (1991-1992 Reg. Sess.)). Both events are irrelevant to our conclusion that in June 1990, the voters enacted two effective propositions amending section 190.2; and in any event, as explained below, they do not call in question our conclusion.

Merely because the voters subsequently failed to pass a measure that partly replicated Proposition 115, but which also required substantial expenditures and proposed additional changes inconsistent with other parts of Proposition 115, does not implicate the validity of Proposition 115. Although the Court of Appeal suggested the disposition of Proposition 129 indicated the voters did not wish that Proposition 115's amendments to section 190.2 be enacted, we find it equally plausible that the voters viewed Proposition 129 as unnecessary (because it replicated large parts of Proposition 115), undesirable (because it was inconsistent with other substantive parts of Proposition 115), and unduly expensive. Accordingly, we do not view the failure of Proposition 129 as indicating the voters' collective "change of heart" about the amendments made by Proposition 115 to section 190.2.

Finally, courts have frequently observed that " ' "[a]s evidences of legislative intent [unpassed bills] have little value." ' " (*State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 63 [152 Cal.Rptr. 153], and cases cited.) This is all the more so when the intent at issue is not that of the Legislature, but the voters at large. We conclude the Legislature's subsequent failure to pass Assembly Bill No. 96 is wholly unpersuasive evidence of the voters' intent in enacting the propositions at issue here.

[8]Furthermore, all of the syntax, punctuation, and "gender neutral" changes made by Proposition 114, to section 190.2, subdivision (a), are operative.

A more difficult question, which we address for the guidance of lower courts, concerns Proposition 115's substantive amendments to those provisions of section 190.2 that were reenacted by Proposition 114 with minor, *nonsubstantive* changes. For example, whereas the two propositions made identical "gender neutral" changes to the "witness killing" special circumstance (§ 190.2, subd. (a)(10)), Proposition 115 made additional, *substantive* amendments expanding the scope of the provision to include witnesses killed in connection with testimony relating to a *juvenile* proceeding. Likewise, whereas Proposition 114 made one simple and nonsubstantive grammar change in section 190.2, subdivision (b) (inserting "paragraph" for "paragraphs"), Proposition 115 made substantial *substantive* amendments designed to revise the rules relating to the application of the death penalty to a defendant who was not the "actual killer." (See *ante*, pp. 986-987.)

Contrary to petitioner's view, we perceive no conflict in the two propositions' amendments to these provisions. Consistent with our analysis above, we conclude that Proposition 114's technical and compelled "reenactment" (with minor and nonsubstantive changes) of section 190.2, subdivisions (a)(10) and (b), cannot reasonably be construed as a decision by the voters that those provisions as reenacted should prevail over the substantive amendments made to the same provisions by Proposition 115. As above, because there is no evidence in this case that the voters intended or even considered the preclusive result advanced by petitioner, we conclude the nonsubstantive changes made by Proposition 114 to section 190.2, subdivisions (a)(10) and (b), did not create a "conflict" as that term is used in article II, section 10, subdivision (b) of the Constitution. Accordingly, the changes made by Proposition 115 to section 190.2, subdivision (a)(10), and the proposition's wholesale revision of subdivision (b) (and enactment of subdivisions (c), (d) and (e)), are operative.

### IV.

Petitioner may properly be charged with the "[r]ape by instrument" special circumstance added to section 190.2, subdivision (a)(17) by Proposition 115. The judgment of the Court of Appeal is reversed.

Panelli, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

**MOSK, J.**—I dissent. The judgment of the Court of Appeal should be affirmed. That court correctly concluded that Penal Code section 190.2 (sometimes hereafter section 190.2) under Proposition 114 prevails over the identically numbered provision under Proposition 115.

At the June 5, 1990, Primary Election, the voters approved a legislative initiative amendment designated on the ballot as Proposition 114—3,435,095

(71.1 percent) in favor and 1,395,087 (28.9 percent) against. (Supp. to Statement of Vote, Prim. Elec. (June 5, 1990) p. 13.) The initiative dealt with section 190.2. On June 6, the statutory provision as enacted by this measure became effective. (See Cal. Const., art. II, § 10, subd. (a).)

At the same election, the voters approved an initiative constitutional amendment and statute designated on the ballot as Proposition 115— 2,690,115 (57 percent) in favor and 2,026,600 (43 percent) against. (Supp. to Statement of Vote, Prim. Elec. (June 5, 1990) p. 13.) This initiative also dealt with section 190.2. The day after the election, the statutory provision as it appears in this measure purportedly became effective. (See Cal. Const., art. II, § 10, subd. (a).)

Article II, section 10, subdivision (b) of the California Constitution (hereafter article II, section 10(b)) provides that "If provisions of 2 or more measures approved at the same election conflict, those of the measure receiving the highest affirmative vote shall prevail."

The threshold question—which will prove to be dispositive—is this: Do Proposition 114's section 190.2 and Proposition 115's section 190.2 conflict?

Section 190.2 defines the special circumstances that render first degree murderers eligible for the death penalty, and also fixes the conditions of liability for such murderers. Put simply, it expressly authorizes the ultimate sanction in specified situations, and impliedly prohibits it in all others. Further, in the specified situations, it delineates the requirements for responsibility depending on the nature of the murderer's precise conduct.

Proposition 114's section 190.2, in substantive part, expands the coverage of the peace-officer-murder special circumstance in the statutory provision as it was originally enacted by broadening the definition of "peace officer." (Prop. 114, § 16, affecting Pen. Code, § 190.2, subd. (a)(7).) Otherwise, it essentially adheres to the original enactment.

Proposition 115's section 190.2 purports to make more, and more extensive, changes. For example, it would:

(1) Remove the requirement that special circumstances must be "charged" and "specially" found. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (a).)

(2) Extend the witness-killing special circumstance to witnesses in juvenile proceedings as well as those in criminal proceedings. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (a)(10).)

(3)  Expressly require intent to kill for the prosecutor-murder and judge-murder special circumstances. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (a)(11), (12).)

(4)  Expand the felony-murder special circumstance to cover felony-murder/mayhem and—what is alleged here—felony-murder/rape-by-instrument. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (a)(17)(x), (xi).)

(5)  Remove the requirement of proof of the infliction of extreme physical pain from the torture-murder special circumstance. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (a)(18).)

(6)  Establish that the liability of an actual killer under a special circumstance does not require intent to kill, unless the special circumstance specifically so states. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (b).)

(7)  Establish that for the special circumstances generally, the liability of an aider and abettor requires intent to kill. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (c).)

(8)  Establish that for the felony-murder special circumstance specifically, the liability of an aider and abettor does not require intent to kill, but only reckless indifference to human life and major participation in the underlying felony. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (d).)

Proposition 115's section 190.2, however, does not purport to make any substantive change in the peace-officer-murder special circumstance. (Prop. 115, § 10, affecting Pen. Code, § 190.2, subd. (a)(7).)

In view of the foregoing, only one answer can be given to the question whether Proposition 114's section 190.2 and Proposition 115's section 190.2 conflict. That answer is, and must be, affirmative.

For present purposes, we need consider only the felony-murder/rape-by-instrument special circumstance, which is alleged here. As stated, Proposition 114's section 190.2 defines the special circumstances that render first degree murderers eligible for the death penalty. Only the situations specified therein allow the ultimate sanction. They do *not* include felony-murder/rape-by-instrument. Hence, death is *barred* under such facts. Similarly, Proposition 115's section 190.2 defines the special circumstances that render first degree murderers eligible for the death penalty. Only the situations specified therein allow the ultimate sanction. These *do* include felony-murder/rape-by-instrument. Hence, death is *permitted* under such facts.

It is axiomatic that two provisions conflict when one authorizes what the other prohibits. That is the case here. As shown, Proposition 115's section 190.2 permits the death penalty for felony-murder/rape-by-instrument. By contrast, Proposition 114's section 190.2 bars that punishment in the same situation.

Therefore, under article II, section 10(b), the following result is mandated as between the conflicting provisions: Proposition 114's section 190.2, which received a higher vote, must prevail over Proposition 115's section 190.2, which received a lower vote.

The majority conclude to the contrary. In essence, they seek to avoid the mandate of article II, section 10(b) by simply denying the existence of the conflict.

At the threshold, the majority "construe 'provision' [under article II, section 10(b)] to mean a paragraph (or a numbered subpart of a paragraph) of a measure." (Maj. opn., *ante*, at p. 988, fn. 5.) The interpretation is gratuitous. One might just as reasonably—or unreasonably—read "provision" to refer to a clause, phrase, or even a single word, if the result desired so demands. The interpretation is also unpersuasive. We usually take "provision" to mean a *section* of a measure—like section 190.2 in this proceeding. I see no reason to depart from that understanding here.

The majority then assert in substance that Proposition 114's section 190.2 and Proposition 115's section 190.2 are not "comprehensive schemes" and may not be characterized as "competing" but rather as "complementary" or "supplementary."

Whether these terms carry any determinate meaning is not clear. They seem to function as little more than conclusory labels. But to the extent that they do have content, they cannot reasonably be applied in the manner of the majority. It is plain that Proposition 114's section 190.2 and Proposition 115's section 190.2 each fully and exclusively regulate the subject of death eligibility for first degree murderers. Hence, each must be termed a "comprehensive scheme." Further, whereas Proposition 115's section 190.2 permits the death penalty for felony-murder/rape-by-instrument, Proposition 114's section 190.2 bars that punishment in the same situation. Therefore, the two versions of the statutory provision must be deemed "competing." They certainly cannot be considered "complementary" or "supplementary." The majority all but declare that the two measures were presented to the voters as such. The implication is without support.

The majority also focus their discussion on the specific amendments proposed by Proposition 114.

But the fact remains that the voters enacted Proposition 114's section 190.2 in its entirety and not merely its specific amendments. I can find no principled means to deny operative force to the whole but to grant it to the parts.

The majority's analysis here effectively establishes, and ultimately depends on, the following "canon of construction": In a situation such as this, we presume that the legislative body intends the amendment to the statutory provision but not the statutory provision itself. Such a rule cannot be sound. Applied here, it would compel the conclusion that the voters intended only the following under Proposition 114: ". . . *or her . . . or her . . . 830.32, 830.33, 830.34, . . . 830.37, . . .* ~~830.5a,~~ *. . . or her . . .* ~~such~~ *the . . .* ~~such~~ *the . . . or her . . . or her . . . or her . . .* ~~such~~ *the . . .* ~~such~~ *the . . . or her . . . or her . . .* ~~fireman~~ *firefighter . . . or her . . .* ~~such~~ *the . . .* ~~such~~ *the . . .* ~~fireman~~ *firefighter . . . or her . . . or her . . .* ~~or~~ *of . . . or she . . . or her . . .* ~~, as~~ *. As . . . or her . . .* ~~paragraphs~~ *paragraph . . . .*" (Ballot Pamp., Prop. 114, Primary Elec. (June 5, 1990) p. 29.)

The majority then assert in substance that those who proposed the enactment of section 190.2 as it appears in Proposition 114 and those who voted for its passage did so under "compulsion" of article IV, section 9 of the California Constitution, which provides in pertinent part that "[a] section of a statute may not be amended unless the section is re-enacted as amended."

Any "compulsion" of this sort is more apparent than real. It is also immaterial. The drafters could certainly have included in Proposition 114's section 190.2 each and every amendment contained in Proposition 115's section 190.2. They chose not to do so. Similarly, the voters could surely have rejected Proposition 114 in favor of Proposition 115. They too chose not to do so.

As they reach their conclusion, the majority declare that the dispositive question is whether the voters intended Proposition 114's section 190.2 to prevail over Proposition 115's section 190.2. That is simply not the case. When, as here, the provisions conflict, there simply is no question of intent. Article II, section 10(b) mandates that Proposition 114, which received the higher vote, "*shall* prevail" over the Proposition 115, which received the lower.

The majority ask: What is the intent of the voters when they amend a statute and then, under "compulsion," reenact the statute as amended?

The answer is simple and manifest: To amend the statute and reenact it as amended.

Here, the voters had the same intent as to both Proposition 114's section 190.2 and Proposition 115's section 190.2—to amend and reenact. The two provisions, however, conflict. Proposition 114's received the higher vote. It prevails.

In substance and effect, the majority "assume[] that because a majority of voters approved both initiatives, they intended that both take effect to the greatest extent possible. This assumption, however, is incapable of proof. That some voters would have been satisfied with the adoption of either proposition does not suggest that they wanted both, or that the same voters cast a majority of the affirmative votes for each initiative." (*Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 760 [274 Cal.Rptr. 787, 799 P.2d 1220], italics deleted.)

Indeed, on the peculiar facts here, the majority's "assumption" appears capable of *disproof.*

At the November 6, 1990, General Election, which immediately followed the June 5, 1990, Primary Election, the voters were presented with an initiative constitutional amendment and statute designated on the ballot as Proposition 129. This initiative would have *expressly* enacted section 190.2 incorporating the specific amendments of Proposition 115 as well as those of Proposition 114. (Prop. 129, § 15.) The measure failed—5,192,742 (72.37 percent) against and 1,982,369 (27.63 percent) in favor. (Certified Statement of the Vote, Gen. Elec. (Nov. 6, 1990) p. 61.)

This is evidence—not compelling perhaps, but persuasive nonetheless—that the voters did *not* intend that both Proposition 114's section 190.2 and Proposition 115's section 190.2 take effect to the greatest extent possible.

It could perhaps be argued that the voters did not specifically intend to reject Proposition 115's section 190.2 in rejecting Proposition 129, but only one or more of the many other provisions contained in that measure. But it could also be argued that the voters did not specifically intend to adopt Proposition 115's section 190.2 in adopting Proposition 115 itself, but only one or more of the many other provisions contained in *that* measure.

In conclusion, because I am of the view that Proposition 114's section 190.2 prevails over Proposition 115's section 190.2, I would affirm the judgment of the Court of Appeal.

Petitioner's application for a rehearing was denied August 20, 1992. Mosk, J., was of the opinion that the application should be granted.