Filed 1/28/21  P. v. Mallet CA2/1
Opinion following recall of remittitur

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B301369 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A619834) |
| v. | |
| JEROME EVAN MALLET, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Reversed and remanded with directions.

Tracy A. Rogers, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In 1981, a jury convicted Jerome Evan Mallet of first degree murder and other charges. On January 16, 2019, Mallet filed a petition for resentencing under Penal Code section 1170.95,[1] which the trial court summarily denied. Mallet appeals from this denial. The appeal centers on a common issue faced by trial courts in applying section 1170.95, namely, the scope of the trial court's prima facie review of the petition. In this case, the People agree the trial court exceeded the scope of this review by making factual findings. We agree and reverse with instructions for the trial court to issue an order to show cause and conduct a hearing pursuant to section 1170.95, subdivision (d).

## BACKGROUND

**A. Summary of Facts**

This court affirmed the judgment on June 29, 1983. (*People v. Mallet* (June 29, 1983, No. 41449) [nonpub. opn.].) The following summary of the facts is derived from our unpublished opinion from Mallet's direct appeal.

On December 27, 1980, between 11:00 p.m. and midnight, Cora Taylor[2] was at home with her daughter Mary, her son Michael, and Michael's friend, William Birdsong. According to Cora's trial testimony, following a knock at the front door, Mallet and two other young men entered her apartment and asked to speak with "Pierre," a nickname for Michael. As the three men, Cora, Michael, Mary, and Birdsong gathered in the combined living room and bedroom, Mallet hit Birdsong in the mouth and a

---

[1] All unspecified statutory references are to the Penal Code.

[2] Because they share the same last name, we will refer to Cora Taylor and her children, Mary and Michael, by their first names, intending no disrespect.

scuffle ensued.  Michael stated he knew Mallet from the local park.  At trial, Mary testified she had seen Mallet twice before in their neighborhood.

Mallet directed the four occupants to lie on the bed face down and a coat was thrown over their heads.  The assailants started ransacking the house.  Cora observed that Mallet had a gun.  At one point, he aimed a gun at Cora and said, "You old bitch, I ought to blow your head off."  The assailants asked the Taylors and Birdsong if there was money in the house and were told there was none.  Birdsong was asked if he had any money; he said he had five dollars.  He was told that if it was discovered that he had more, his head would be blown off.  One of the assailants went through Birdsong's pockets, and whispered in Birdsong's ear, "You have been invited to your friend's death."  Cora's purse was taken, and the assailants continued ransacking her home.

At one point, Mallet hit Mary near her left ear.  Cora also was struck.  Cora, who was able to catch glimpses of what was occurring by peeking from under the coat, saw one of the assailants pull Mary off the bed by her hair.  Then, someone also pulled Birdsong up by his hair.  Cora and Michael were told to stand.  Michael was asked about money, and he said there was some money in the kitchen.

One of the assailants raped Mary in the bathroom.  Mallet attempted to rape Mary.  Cora and Birdsong subsequently were pushed into the bathroom with Mary.  While the bathroom door was closed, they heard gunshots.  Cora testified that she peeked through the bathroom door and saw Michael lying in a puddle of blood in the living room.  He had been shot in the head.  Birdsong testified that one of the assailants said to Michael, "We don't like

you anyway." At trial, Cora and Mary identified Mallet as the gunman.

The suspects fled. A few minutes after midnight, law enforcement officers near the local park saw a vehicle traveling without lights. Officers pursued the vehicle, which crashed. Four young men ran from the vehicle and officers subsequently found Mallet nearby, hiding in a bush.

Officers recovered a stereo and a .357 Luger pistol from the getaway vehicle. It was determined that Michael died of a gunshot wound to the head. Due to the damaged condition of the bullet removed from his body, it was not possible to correlate the bullet to the Luger. (*People v. Mallet*, *supra*, No. 41449.)

## B.    The Jury Verdict and Sentencing Hearing

Following a jury trial, Mallet was convicted of one count of first degree murder under section 187 (count 1), two counts of rape in concert under section 264.1 (counts 2 & 3), one count of assault with intent to commit rape under section 220 (count 4), one count of burglary under section 459 (count 5), and three counts of robbery under section 211 (counts 6 through 8). The jury found true the allegations that Mallet personally used a firearm and that a principal was armed with a firearm in the commission of all the offenses, except count 4, assault with intent to commit rape.[3]

As to count 6, which charged Mallet with robbery of Michael, the murder victim, it was alleged that Mallet personally inflicted great bodily injury on Michael. The jury found this allegation to be not true. The jury deadlocked on the special

---

[3] The trial court granted a motion to dismiss the principal armed allegation with respect to count 4.

4

circumstance allegations that the murder was committed during the commission of a robbery and a burglary—which, prior to the passage of Proposition 115 in 1990, necessarily would have required the jury to find that Mallet was the actual killer or intentionally aided and abetted in first degree murder.  (§ 190.2; see *People v. Banks* (2015) 61 Cal.4th 788, 798 ["as it stood in 1990, state law made only those felony-murder aiders and abettors who intended to kill eligible for a death sentence"]; *Yoshisato v. Superior Court* (1992) 2 Cal.4th 978, 986-987 [discussing amendments to § 190.2 following passage of Proposition 115].)

The special circumstance allegations were dismissed at the time of sentencing.  At the sentencing hearing, the trial court commented that based on the jury's failure to find that Mallet inflicted great bodily injury on the murder victim, the jury apparently felt that Mallet was not the actual killer.  The trial court clarified, "for the purpose of the record, I am going to conclude that [Mallet] was not the actual shooter.  Nor did he actually aid and abet the actual shooter [¶] . . . [¶] [w]ithin the meaning of [section] 190.[2], because I could see some problems with respect to the special circumstance, and apparently one or more of the jurors did too."  "I just want the record to be clear so that the appellate court won't think I am sentencing him on the basis that he actually aided and abetted the actual shooter."  The trial court predicated its sentencing decision on a finding that the murder was committed during a robbery.  The court sentenced Mallet to state prison for the term prescribed by law on the murder count, plus two years for the firearm enhancement, to be served consecutive to a total term of 21 years and four months on the remaining counts.

5

## C.    The Direct Appeal

On appeal, Mallet argued, among other things, that the felony-murder doctrine was unconstitutional because it permitted a finding of malice aforethought as a matter of law when a killing occurred during the commission of certain enumerated felonies. We acknowledged that the issue was under review in the California Supreme Court.  Our decision recited the current state of the law, as embodied in *People v. Johnson* (1974) 38 Cal.App.3d 1, 8, which held that the felony-murder rule "dispenses with premeditation and malice as elements of first degree murder."

We noted there was no eyewitness testimony about the actual shooting of Michael.  The prosecution's theory was that Mallet shot and killed Michael while perpetrating a robbery.  We found there was some question "of the presence of actual, rather than artificially presumed, malice." (*People v. Mallet*, *supra*, No. 41449.)  Nonetheless, because malice aforethought was not an element of felony murder, we upheld the conviction under the existing law.

## D.    The Petition for Resentencing

Mallet filed a petition for resentencing under section 1170.95 on January 16, 2019.  He alleged that he was convicted of felony murder under a theory that is now invalid.  The trial court appointed counsel to represent Mallet.

The People filed an opposition to Mallet's petition.  The opposition attached and cited to the information, a probation report, the abstract of judgment, the remittitur from the direct appeal, a comprehensive risk assessment of Mallet, a life prisoner evaluation, and transcripts of hearings relating to evidence and jury selection.  Mallet, via his counsel, filed a reply.

On September 10, 2019, the trial court summarily denied Mallet's section 1170.95 petition. In doing so, the trial court's minute order specified that it reviewed Mallet's petition, the People's response, "the court file (if available)," and any appellate decisions. However, the trial court also stated that it derived the summary of facts on which it based its ruling on "the appellate decision, People's response in opposition to the petition and police reports."

The trial court observed that it was not known whether Mallet was the actual killer. "Assuming he was not the one to fire the fatal shot," the court concluded, "Mallet clearly aided and abetted in the killing. In addition, the facts surrounding this incident show Mallet had the specific intent to kill Michael." The trial court further concluded that Mallet was a major participant in the crime who acted with reckless indifference to human life because he initially possessed the firearm, he was the first to make physical contact with one of the victims "when he grabbed Birdsong," he demanded money and drugs from the victims, he attempted to rape Mary, and he acted with the other assailants to isolate Michael from the other victims before killing him.

In response to our order for augmentation of the record, the trial court transmitted the superior court file and exhibits for our inspection. The clerk of the superior court certified that the police report was not located. The augmented record contains the transcript of the sentencing hearing, the abstract of judgment, and our opinion on direct appeal, among other records not relevant to our decision. It does not contain the jury instructions,

jury questions, verdict forms, or transcripts of the trial testimony and arguments of counsel.[4]

Mallet timely appealed the September 10, 2019, order.

## DISCUSSION

### A.      Section 1170.95

Mallet argues the trial court erred by denying his petition for resentencing without issuing an order to show cause or conducting an evidentiary hearing.  The People agree, acknowledging that the record of conviction does not demonstrate as a matter of law that Mallet was either the actual killer, acted with specific intent to kill, or was a major participant who acted with reckless indifference to human life.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1135, review granted Mar. 18, 2020, S260598.)  Senate Bill No. 1437 accomplished this

---

[4] Based upon the trial court's statement that it reviewed "the court file (if available)," it is unclear whether it had before it the same documents that were provided in response to our order for augmentation.  The documents contained in the augmented record are at odds with the trial court's statement that it reviewed "the court file (if available)," and "police reports."  Based on our decision to remand this matter for further proceedings, we need not consider the effect of this ambiguity.

by amending section 188, which defines malice, and section 189, which defines the degrees of murder, and as now amended, addresses felony murder liability under subdivision (e).  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 326, review granted Mar. 18, 2020, S260493.)

Senate Bill No. 1437 also enacted section 1170.95, which provides a vehicle for persons who were convicted of murder pursuant to a now invalidated theory to petition to have their conviction vacated and to be resentenced.  (*Lewis*, *supra*, 43 Cal.App.5th at p. 1135; see § 1170.95 subd. (a).)

Section 1170.95 requires the trial court to engage in multiple levels of review.  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975; *People v. Verdugo*, *supra*, 44 Cal.App.5th at pp. 327-328; *People v. Lewis*, *supra*, 43 Cal.App.5th at pp. 1136-1138.)  The trial court first conducts an initial review to determine the facial sufficiency of the petition.  (§ 1170.95, subd. (b); *Drayton*, *supra*, at p. 974; *Verdugo*, *supra*, at p. 328.)  If the petition includes the required information, the trial court then reviews the petition to determine whether the petitioner has made a prima facie showing of eligibility.  (§ 1170.95, subd. (c); *Drayton*, *supra*, at pp. 975-976; *Verdugo*, *supra*, at pp. 327-328, 330; *Lewis*, *supra*, at p. 1138.)  If so, the trial court must then appoint counsel and order briefing to assist the trial court in determining whether the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1170.95, subd. (c); *Verdugo*, *supra*, at p. 332 [concluding under subd. (c) of § 1170.95, the petitioner must demonstrate two prima facie showings]; *Lewis*, *supra*, at p. 1140 [holding § 1170.95, subd. (c) does not require appointment of counsel "until the court makes the

threshold determination that [the] petitioner 'falls within the provisions' of the statute"].)

In determining whether a petitioner has demonstrated the prima facie showings, the trial court may review the record of conviction. (*People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1138.) The record of conviction may include the complaint, information or indictment, the verdict forms or the factual basis for a negotiated plea, the abstract of judgment, and any appellate decision on direct appeal. (*People v. Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330, 331-333; *Lewis*, *supra*, at p. 1138.)

At these initial stages, the trial court's role is to determine whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner. (*People v. Drayton*, *supra*, 47 Cal.App.5th at p. 980; *People v. Verdugo*, *supra*, 44 Cal.App.5th at p. 329.) It must not engage in fact-finding or assess the credibility of the witnesses. (*Drayton*, *supra*, at p. 980.) The court "is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*Ibid.*)

If the petitioner satisfies both prima facie showings, then the trial court must issue an order to show cause why resentencing relief should not be granted. (§ 1170.95, subd. (c); *People v. Verdugo*, *supra*, 44 Cal.App.5th at pp. 328-329.) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. . . ." (§ 1170.95, subd. (d)(3).) "The prosecutor and

10

the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid*.)

## B.    The Trial Court Erred in Summarily Denying Mallet's Section 1170.95 Petition

In the present case, the jury did not determine that Mallet was the actual killer, aided and abetted in the first degree murder with the intent to kill, or was a major participant who acted with reckless indifference to human life.  The jury was unable to reach a verdict on the special circumstance allegations and found not true the allegation that Mallet inflicted great bodily injury on Michael while committing the robbery.  In fact, during sentencing, the trial court went so far as to observe that, in its view, Mallet was not the actual killer and did not aid or abet in the killing.  Thus, although the jury instructions are not available, the trial court's comments at sentencing indicate that Mallet was convicted on a theory of felony murder based solely on the commission of the underlying robbery.  As we noted on direct appeal, at the time of Mallet's trial in 1981, the felony murder rule did not require proof of premeditation and malice.  (See *People v. Chun* (2009) 45 Cal.4th 1172, 1182 [under prior law, a killing committed during an enumerated felony supports a murder conviction "without the necessity of further examining the defendant's mental state"].)

In reaching the conclusions that Mallet aided and abetted with the specific intent to kill, or that he was a major participant who acted with reckless indifference to human life, the trial court engaged in the type of factfinding that is not permissible prior to the issuance of an order to show cause under section 1170.95, subdivision (c).  (See *People v. Drayton*, *supra*, 47 Cal.App.5th at p. 982.)  The record of conviction does not establish *as a matter of*

11

*law* that Mallet is ineligible for relief under section 1170.95. Accordingly, the matter must be remanded for an order to show cause pursuant to section 1170.95, subdivision (c), and a hearing pursuant to section 1170.95, subdivision (d), during which the parties may "rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) We express no opinion on Mallet's ultimate entitlement to relief following a hearing.

## DISPOSITION

The order denying Mallet's petition for resentencing under section 1170.95 is reversed and the matter is remanded to the superior court. On remand, the superior court shall issue an order to show cause and conduct a hearing in accordance with section 1170.95, subdivisions (c) and (d).

NOT TO BE PUBLISHED

FEDERMAN, J.[*]

We concur:

CHANEY, J.

BENDIX, Acting P. J.

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.