Filed 9/28/22  P. v. Herns CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F081400 |
| Plaintiff and Respondent, | (Super. Ct. No. CF91431622) |
| v. | |
| LEE ANDREW HERNS, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County.  John F. Vogt, Judge.

Elizabeth Campbell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, Ian Whitney and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

In 1992, defendant Lee Andrew Herns was convicted of first degree murder and attempted robbery by means of force and fear. The jury found true that defendant was armed with a firearm in the commission of the offenses, but found untrue the related special circumstance allegation. The court imposed a 25 years to life sentence, plus an additional year for the firearm enhancement for the murder count and a concurrent term of three years for the attempted robbery.

After the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), defendant filed a petition for resentencing, alleging he could no longer be convicted of murder under the new laws. The court found defendant made a prima facie case for relief, but denied the motion for resentencing after holding a hearing. Defendant filed a timely notice of appeal.

On appeal, defendant claims the trial court erred in denying his petition for resentencing. He asserts the not true finding on the special circumstance allegation established he was entitled to resentencing. Alternatively, he contends the court applied the wrong standard of review at the evidentiary hearing, relied on inadmissible evidence, and erred in concluding he was a major participant who acted with reckless indifference. We reverse the court's order denying relief and remand for a new evidentiary hearing under the proper standard of review during which the admissibility of evidence should be governed by the Evidence Code and the newly revised statute.

## PROCEDURAL BACKGROUND

### I.    Verdict and Sentencing

On May 6, 1992, a jury found defendant guilty of murder in the first degree. (Pen. Code, § 187.)[1] The jury further found that, in the commission of the offense, defendant was armed with a firearm (§ 12022, subd. (a)(1)), but found untrue an allegation that he

---

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

2.

committed the murder while engaged in the commission and attempted commission of an armed robbery, in violation of sections 664 and 211, within the meaning of section 190.2, former subdivision (a)(17)(i). The jury also found defendant guilty of attempted robbery by means of force and fear (§§ 664, 211, 212.5, subd. (b)), with the same arming enhancement.

On June 15, 1992, the court imposed a term of 25 years to life for the murder conviction, with an additional one year for the firearm enhancement, and a concurrent term of three years on the robbery conviction.

## II.    Petition for Resentencing Under Section 1172.6

On October 17, 2019, defendant filed a petition for resentencing under former section 1170.95 (now section 1172.6),[2] alleging he was convicted of first degree murder under the felony-murder rule and could not now be convicted of first degree murder because of the changes to sections 188 and 189.

On December 11, 2019, the People filed a written opposition arguing that, although defendant was not the actual killer, he "could still be convicted of murder." They asserted the jury's not true finding as to the robbery murder special circumstance did not make defendant entitled to relief as a matter of law. The People argued, "[t]he jury's finding here was not that the defendant 'did not' act as a major participant with reckless indifference, it was that the People did not prove the same beyond a reasonable doubt." (Fn. omitted.) The written opposition further asserted, "there are facts here supportive of the defendant being a major participant who acted with reckless indifference. First, defendant brought the murder weapon into this crime. Second, he was present at the scene of the murder. Third, he was involved in some planning. These

---

[2]    In 2020, defendant filed the petition for resentencing pursuant to former section 1170.95. Effective June 30, 2022, the Legislature renumbered former section 1170.95 to section 1172.6. (Stats. 2022, ch. 58, § 10, pp. 25–27.) There were no substantive changes to the statute. For purposes of clarity, we refer to the statute as section 1172.6 throughout the opinion.

3.

types of considerations are probative as to major participation and/or reckless indifference." In a separate motion, the People moved to dismiss defendant's petition for resentencing based on the alleged unconstitutionality of Senate Bill 1437.

On February 13, 2020, defendant filed an opposition to the People's motion to dismiss the petition for resentencing, addressing their constitutional arguments. The court set a hearing on the merits of the petition for June 1, 2020.

On May 29, 2020, the People filed a hearing brief and argument in opposition to defendant's section 1170.95 petition. In it, they argued it could not be confirmed that the jury's not true finding as to the special circumstance allegation meant the jury found defendant did not act as a major participant and/or did not have reckless indifference to human life such that defendant was automatically entitled to relief under section 1172.6, subdivision (d)(2) (former section 1170.95, subd. (d)(2)). The People asserted they "sought to confirm that [d]efendant's jury was instructed in conformance with Section 190.2[, subdivision ](d)" but "at the previous hearing in this case, inspection of the Court's file did not reveal the [jury] instructions" and they were also unable to obtain those records from the Court of Appeal, California Supreme Court, and State Archives. Accordingly, the People argued "the available record in this case is silent with respect to the specific meaning of the jury's not true finding as to the special circumstance." They argued the trial notes from the People's trial counsel suggested "that the requisite mental state for the special circumstance contemplated by the parties was intent to kill." Accordingly, it could be inferred the jury found defendant did not have the intent to kill, but "made no specific determination as to whether [defendant] was a major participant who acted with reckless indifference to human life."

The People then went on to discuss the evidentiary principles and burden of proof they deemed to be applicable at the evidentiary hearing and detailed the evidence in support of their contention that defendant was not entitled to relief. They attached to their motion the court of appeal's opinion from defendant's direct appeal and the

4.

probation report, and they relied on the statements therein to detail the facts of the case. The People moved the court to consider the appellate opinion and probation report "without limitation … in determining whether or not the People have demonstrated that Defendant is ineligible for resentencing." They also asserted the court could consider the abstract of judgment, information, and any sentencing transcripts.

The People acknowledged the statute required them to prove "'beyond a reasonable doubt, that [defendant] is ineligible for resentencing.'" They argued this meant they had to show beyond a reasonable doubt that defendant could be convicted of first or second degree murder. They asserted, "[i]mportantly, the People are not required to show that the defendant *would be* convicted, would *probably have been convicted*, or even that it is *reasonably probable* the defendant would be convicted. The burden on [the] People is to just demonstrate that there is enough evidence, in spite of the amendments to Sections 188 and 189 from which a trier of fact could potentially find defendant guilty of murder beyond a reasonable doubt." They equated the standard of review to the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction. The People argued that a rational trier of fact *could* find, beyond a reasonable doubt, that defendant "'was a major participant in the underlying felony and acted with reckless indifference to human life ….'" The court continued the hearing to June 15, 2020.

On June 4, 2020, defendant filed a memorandum of points and authorities in support of his petition for resentencing arguing that since the jury found the special circumstances allegation under section 190.2, subdivision (a)(17) not true, defendant's murder conviction should be vacated as a matter of law under section 1172.6, subdivision (d)(2) (former section 1170.95, subd. (d)(2)). He argued "§ 190.2[, subdivision ](d) was the prevailing law both at the time of the offense and of the jury trial." Defendant also filed a "hearing brief" on June 5, 2020, stating section 1172.6 subdivision (d)(3), places the burden on the prosecution at the hearing to prove, "beyond

a reasonable doubt, that [defendant] is ineligible for resentencing. In other words, the prosecution must prove that [defendant] acted as a major participant and with reckless indifference to human life in the commission of the target felony, a robbery." Defendant expressly disagreed with the prosecution's contention "the standard is characterized as sufficiency of the evidence" and argued "[t]he standard is proof beyond a reasonable doubt." Defendant agreed "that the opinion of the Court of Appeal[] for this case, the report of the probation office, the abstract of judgment, jury verdict and findings, and Information" could be used as evidence at the hearing. Defendant argued he was not a major participant in the underlying felony who acted with reckless indifference to human life. He asserted, in part, the "robbery in the instant case was planned to be nothing more than a 'garden variety' robbery," and "the shooting was a spontaneous reaction rather than a planned event."

On June 8, 2020, the People filed a supplemental hearing brief. The People asserted, "neither party has been able to obtain the actual instructions read to the jury. Subsequent research reveals that it is not … clear that [d]efendant's jury was instructed in accordance with … Section 190.2[, subdivision ](d), which is the fount [*sic*] of the major participant reckless indifference language." (Footnote omitted.) Citing *People v. Hoyos* (2007) 41 Cal.4th 872, 889–890 (*Hoyos*),[3] the People argued the law was unsettled between 1990 and 1992 regarding "whether or not a non-killer could be convicted of felony murder special circumstances unless they had the intent to kill" based on the challenges to the constitutionality of Proposition 115 through which section 190.2, subdivision (d) was enacted. They asserted, "[t]he facts, (July 1, 1990) trial and subsequent pronouncement of judgment (April 14, 1992–June 11, 1992) of this case occurred during this two year window of time." As such, the People contended it was

---

[3]     *Hoyos, supra*, 41 Cal.4th 872, abrogated on other grounds in *People v. McKinnon* (2011) 52 Cal.4th 610, 641.

unclear whether the jury was instructed in accordance with section 190.2, subdivision (d). Rather, they asserted, in light of the dispute in the law at the time, "it is certainly possible that the trial court here chose to proceed with caution by making no reference to major participation and reckless indifference, but instead instructed the jury that intent to kill was required for a true finding on the robbery murder special circumstance."

## III.    Court Denied Defendant's Petition After Holding a Hearing

The court held an initial hearing during which it acknowledged, "[i]t's essentially established that the prima facie case has been presented in the petition." Accordingly, "[i]t shifts the burden to the People ...." The prosecutor then moved into evidence the appellate court opinion, the report of the probation officer, the abstract of judgment, information, and findings and verdicts of the jury with no objection from defense counsel.

The court stated it read the documents now admitted in evidence and "the record establishes that [defendant] was not the actual killer, that much we know. We know that the actual killer obtained the gun somehow from [defendant], that [defendant] had shortly before this murder been in physical possession of this weapon and seemed to have claimed ownership of it. But the facts really are not clear as to the timing of when the codefendant took the gun into his possession." The court inferred, "this wasn't a matter of [defendant] handing the gun over to the codefendant. If anything, the facts would seem to support the conclusion that the codefendant took it upon himself to take the gun." The court stated, with regard to the major participant inquiry, "it's clear [defendant] was present, but honestly beyond that I didn't consider much to be clear."

The prosecutor then emphasized what he believed to be the applicable standard at the hearing as "mandated by the language of [section 1172.6] itself ...." "[T]he thing thatmakes him ineligible [for resentencing] is that he could not be convicted of first or second-degree murder due to the changes.So if I can show the opposite, that he could be,

7.

then I should prevail. And the word 'could,' I think, is a critical word because it's a word of possibility. It's a word of what could a rational trier of fact view." The prosecutor argued the available evidence showed defendant was involved in planning and initiating the robbery and was present at the scene during the shooting. He asked the court to reasonably infer defendant had a gun and he gave it and a bullet to the shooter in furtherance of the plan. He again reiterated "the words in the statute, [defendant] could not be convicted. The question is, what could a rational trier of fact do in these circumstances?" He asserted defendant did nothing to prevent the shooting and fled after it. He urged the court to view the case as a trial judge ruling on a section 1118.1 motion, asserting "all the inculpatory inferences have to be inured to the People's benefit, to the … finding of guilt." Later, he reiterated, "my burden is to show beyond a reasonable doubt that he could [be found guilty], not that he is, but that a reasonable trier of fact could find that."

Defense counsel countered the prosecutor's argument regarding the applicable standard stating, "the burden still rests on the People to prove beyond a reasonable doubt that [defendant] acted with reckless indifference or acted as a major participant or actually both." Defense counsel noted the prosecutor's use of the term "'could'" was concerning because the standard is beyond a reasonable doubt. The following exchange then took place between defense counsel and the court regarding the applicable standard:

"THE COURT: You know, but the word 'could' is in the statute.

"[DEFENSE COUNSEL]: Well, yes, because I don't think that they're saying that it has to be an absolute, but the burden still is beyond a reasonable doubt. So when we're looking at it could be a reasonable inference, that's not the standard of beyond a reasonable doubt. So … the standard that is still applied to the facts of the specific case based on the record that we have, is beyond a reasonable doubt, not a reasonable inference or this could be the case. It still has to be proven beyond a reasonable doubt.

"THE COURT: It's, could he be convicted today?

8.

"[DEFENSE COUNSEL]:Yes.

"THE COURT:And the standard for conviction is beyond a reasonable doubt.

"[DEFENSE COUNSEL]:Which is higher than a reasonable inference.

"THE COURT:All right.…"

The court stated it was not prepared to make a ruling that day and continued the matter to June 29, 2020.  At the continued hearing, the court stated the burden of proof at the hearing was on the prosecution "to prove beyond a reasonable doubt the [defendant] is ineligible for resentencing.  In short, the People must prove [defendant] could not now be convicted of first degree or second-degree murder under the amended … Sections 188 or 189."[4]  The court acknowledged the parties did not dispute defendant was not the actual killer or a direct aider and abettor.  Accordingly, the court was "called upon to determine whether [defendant] was both a major participant in the underlying attempted robbery of the victim and whether he acted with reckless indifference to human life."  The court indicated the parties' briefing "establishe[d] a substantial agreement as to the body of evidence this court shall consider in making these determinations as well as to the applicable case authority defining the standards for these determinations."

Importantly, in discussing the standard it would apply to the hearing, the court stated it would "focus on the application" of the facts of this case to the factors enumerated in *Tison* and *Enmund*[5] "and the other cited cases within it to determine whether [defendant] *could be found guilty of murder under the new law* taking effect on January 1 of 2019, specifically, was he a major participant, and did he act with reckless

---

**4**    Though the court stated "the People must prove [defendant] *could not* now be convicted of first degree or second-degree murder under the amended … Sections 188 or 189."  (Italics added.)  The term "not" in the statement appears to be a misstatement in light of the People's burden at the evidentiary hearing.

**5**    *Tison v. Arizona* (1987) 481 U.S. 137 (*Tison*); *Enmund v. Florida* (1982) 458 U.S. 782 (*Enmund*).

indifference to human life?" (Italics added.) The court found "it is clear that [defendant's] case is at neither end of that [*Banks*,[6] *Tison* and *Enmund*] spectrum or continuum, but is somewhere within it. It is clear that he was not the actual perpetrator of the murder, that is, the actual shooter. Beyond that, [defendant's] involvement and actions were argued as both aggravating and mitigating. Both sides have made serious arguments about how these facts should now be considered."

The court explained the parties' dispute about the applicable standard of review at the hearing in light of the language of former section 1170.95, subdivision (a)(3). The People suggested the court's determination was "tantamount to appellate review on a sufficiency of the evidence claim; viewing the evidence in the light most favorable to the People and presuming the existence of every fact the trier of fact could deduce from the evidence in support of the judgment." Alternatively, the People placed the emphasis on the word "'could,'" asserting the requisite inquiry was whether defendant could be convicted under the new law "as a liberal concept of mere possibility." On the other hand, defendant focused on the express language and legislative intent of the new law and argued the People were attempting to lower their standard of proof under section 1172.6, subdivision (d)(3).

The court stated it would "apply the specific instructional guidance of the new revised CALCRIM instructions" in order to assess whether defendant was a major participant in the underlying robbery or attempted robbery. After considering the factors listed in CALCRIM Nos. 540B, 540C, and 703, the trial court made the following findings based on the factual summary in the appellate opinion, which it deemed to be "the only reliable settled record of facts in this case":

> "The idea of the robbery came to be through [defendant's] observations of the victim, which were then shared with the codefendant. Now, whether the decision to rob the victim was first articulated by either is

---

[6]    *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*).

10.

unknown. But in short order, they did have an agreement to rob the victim, and the plan was activated and carried out shortly thereafter. It is also clear that the shotgun used, which was the only weapon used by the defendant and his codefendant in this attempted robbery, was known by all of the … witnesses to belong to and to be carried in a concealed carrier by [defendant] prior to the robbery, and that the codefendant was allowed access to it. The codefendant did in fact take control of the weapon as the robbery was being undertaken. The record also establishes that [defendant] furnished a live shell to the codefendant after he had possession of the gun. There is no record of any more detailed interaction or discussion about this between [defendant] and the codefendant.

"We also know that there was an ongoing association between [defendant] and the codefendant prior to the robbery. We do not know how long or how in depth this association was. There is no evidence of any prior violent activity conducted by the two together or that [defendant] was aware of any specific prior violent conduct by the codefendant.

"Beyond that, we can safely say that [defendant] accompanied the codefendant to the scene of the robbery, was present when the victim was challenged by the codefendant and when the codefendant shot the victim. We do not have any evidence of other specific actions or words of [defendant] except that he fled the scene immediately upon the victim being shot."

Based on these facts, the court opined defendant "initiated the idea of the robbery, actively joined in the plan to rob the victim, was responsible for the weapon being present, loaded, and used, actively participated in the attempt to rob the victim and then fled once lethal force was used without offering any assistance to the victim." The trial court concluded that the "only reasonable conclusion is that [defendant] was in fact a major participant in the robbery or attempted robbery."

After considering the relevant factors, the court also found defendant "acted with reckless disregard to human life." In so concluding, the trial court stated that "cases in which relief was granted under *Banks* and *Clark*[7] are those in which the parties were not carrying guns themselves and also were not present for the shooting, either because they

---

**7**      *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

were acting as getaway drivers or because they were involved merely in the planning of the crime." (Italics added.) The court acknowledged, under case law, mere participation in a robbery at gunpoint on its own does not establish reckless indifference. The "[c]ourt's questions about this specific element focused on the specific circumstances of the act of the shooting by the codefendant of the victim. The evidence of record established that [the codefendant] shot the victim when he thought the victim was reaching for a gun himself. A loaded firearm was in fact found under the body of the deceased." As such, the court acknowledged that "[t]he evidence does not show the planned robbery included a necessary shooting of the victim or that a shooting of the victim was a necessary part of the planned robbery." Defendant argued he was at the *Enmund* end of the *Tison/Enmund* spectrum in that he was "essentially unaware and not willingly involved in the codefendant's actual shooting of the victim." But, the trial court explained, "[i]n our case, [defendant] identified the victim for the robbery, was involved in the planning of the robbery with the codefendant, who he had known for some time. He supplied the one firearm used in the robbery. He supplied the one round of ammunition used to kill the victim and was personally present in the commission of the robbery and the shooting and did nothing to intervene during the brief encounter before the victim was shot. He did not assist the victim after he [was] shot, and in fact fled from the scene with the codefendant after the victim was shot."

Accordingly, the court found that defendant "is too intricately involved and connected to the events to be granted relief under [section 1172.6]," and that "he does qualify as a major participant who acted with reckless disregard to human life." The court's minute order states the court denied the petition and found "defendant initiated, joined, actively participated, left victim there, and was in fact a major participant as fully stated on the record."

Additionally, the trial court found the jury's not true finding on the special circumstance allegation was not dispositive of the petition under section 1172.6,

12.

subdivision (d)(2).  Since the record did not contain the jury instructions given to the jury, "there [was] no way now to determine whether that finding was in accordance with the current provisions of … Section 190.2, subdivision (d) .…"  The trial court also noted that because the finding occurred prior to the California Supreme Court decisions in *Banks* and *Clark*, "the operative instructions would necessarily be different."

Defendant filed a notice of appeal on July 1, 2020.

## DISCUSSION

Defendant claims that the trial court erred in denying his petition for resentencing because section 1172.6, subdivision (d)(2), required the trial court to resentence defendant based on the jury finding the robbery special circumstance to be not true. Alternatively, defendant claims that the trial court erred in denying relief under section 1172.6, subdivision (d)(3).

### A.      Standard of Review

The proper interpretation of a statute is a question of law we review de novo. (*People v. Lewis* (2021) 11 Cal.5th 952, 961, as modified on denial of rehg. Aug. 25, 2021 (*Lewis*); accord, *People v. Jones* (2001) 25 Cal.4th 98, 107–108, superseded by statute as stated in *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1307 (*Jones*); *People v. Prunty* (2015) 62 Cal.4th 59, 71.)  "'"'"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.'"'"  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  "'[I]t is well settled that we must look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent."'"  (*Lewis, supra*, at p. 964.)  If the language is clear and unambiguous, there is no need for construction.  (*People v. Frausto* (2009) 180 Cal.App.4th 890, 897, as modified Jan. 13, 2010.)  "'"[W]e look to 'the entire substance of the statute … in order to

13.

determine the scope and purpose of the provision .… [Citation.]' [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute .…" [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment … by considering the particular clause or section in the context of the statutory framework as a whole.'"'" (*Lewis, supra*, at p. 961, quoting *People v. Arroyo* (2016) 62 Cal.4th 589, 595.)

"'""Where the trial court applies disputed facts"'"' to a statute, "'""we review the factual findings for substantial evidence and the application of those facts to the statute de novo."'"' (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) The reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value upon which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Bolin* (1998) 18 Cal.4th 297, 331; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

### B.     Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine … to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), p. 2; accord, *People v. Flores* (2022) 76 Cal.App.5th 974, 984 (*Flores*).)

Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), p. 2.) It amends section 188, which

14.

defines malice, and section 189, which defines the degrees of murder to address felony-murder liability.  (Stats. 2018, ch. 1015, §§ 2–3, pp. 3–4.)

Senate Bill 1437 was enacted "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), p. 2; accord, *Lewis, supra*, 11 Cal.5th at p. 967.) The bill accomplished this task by adding three separate provisions to the Penal Code. (*Flores, supra*, 76 Cal.App.5th at p. 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842, superseded by statute on other grounds as stated in *People v. Birdsall* (2022) 77 Cal.App.5th 859, 866, fn. 19 (*Gentile*).)  First, to amend the natural and probable consequences doctrine, the bill added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); *Flores, supra*, at p. 984; accord, *Gentile*, *supra*, at pp. 842–843.)

Second, to amend the felony-murder rule, the bill added section 189, subdivision (e):  "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."  (§ 189, subd. (e); accord, *Flores, supra*, 76 Cal.App.5th at p. 984; *Gentile, supra*, 10 Cal.5th at p. 842.)

The language of section 190.2, subdivision (d) "was designed to codify the holding of *Tison* …, which articulates the constitutional limits on executing felony murderers who did not personally kill.  *Tison* and a prior decision on which it is based, *Enmund* …, collectively place conduct on a spectrum, with felony-murder participants

15.

eligible for death only when their involvement is substantial and they demonstrate a reckless indifference to the grave risk of death created by their actions." (*Banks, supra*, 61 Cal.4th at p. 794.) At the one end of the spectrum is *Enmund*, "'the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable state of mind'" and at the other end of the spectrum, "were actual killers and those who attempted or intended to kill" as was found true in *Tison*. (*Banks, supra*, at p. 800.) Somewhere in between *Enmund* and *Tison* lay the minimum level of culpability and conduct for a finding of major participation and reckless indifference to human life. (*Banks, supra*, at p. 802.)

Finally, Senate Bill 1437 added section 1172.6 (former section 1170.95) to provide a procedure for those convicted of a qualifying offense "'to seek relief under the two ameliorative provisions above.'" (*Flores, supra*, 76 Cal.App.5th at p. 984; accord, *Gentile, supra*, 10 Cal.5th at p. 843.) This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter .…" (§ 1172.6, subd. (a); accord, *Flores, supra*, at p. 984.) "Section [1172.6] lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile, supra*, at p. 853.)

Subdivision (a) of section 1172.6 sets forth the conditions for eligibility for relief, including that the "petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a)(3).) Subdivision (b) of section 1172.6, in turn, "'describes where and how the petition must be filed and specifies its required content,'" including a declaration by the petitioner that he or she "'is eligible for relief according to the criteria set out in

subdivision (a).'" (*People v. Clayton* (2021) 66 Cal.App.5th 145, 152; accord, *People v. Drayton* (2020) 47 Cal.App.5th 965, 973.)

If the court determines the petitioner has met his or her prima facie burden because there remains no proof of ineligibility as a matter of law, "'the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts.'" (*Flores, supra*, 76 Cal.App.5th at p. 985; accord, *Gentile, supra*, 10 Cal.5th at p. 853; accord, § 1172.6, subds. (c), (d)(1).) "If there was a prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony, the court shall vacate the petitioner's conviction and resentence the petitioner." (§ 1172.6, subd. (d)(2); accord, *People v. Clayton, supra*, 66 Cal.App.5th at p. 153; *People v. Ramirez* (2019) 41 Cal.App.5th 923, 929.)

Upon issuance of the order to show cause under section 1172.6, subdivision (c), the superior court must hold an evidentiary "hearing to determine whether the petitioner is entitled to relief …." (§ 1172.6, subd. (d)(3).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid.*) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. (*Ibid.*; accord, *Flores, supra*, 76 Cal.App.5th at pp. 985–986.)

"The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. A

17.

finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).)

### C. Analysis

#### 1. Section 1172.6, Subdivision (d)(2)

Defendant first contends the trial court erred in denying his petition for resentencing because he was entitled to "summary relief" under section 1172.6, subdivision (d)(2), based on the jury's not true finding on the special circumstance allegation. The People disagree, contending the not true finding on the special circumstance allegation only established the jury found defendant did not act with the intent to kill during the commission of the murder. However, the jury did not necessarily find defendant was not a major participant in the robbery who acted with reckless indifference to human life. At the hearing, the People argued that the not true finding on the special circumstance was not dispositive because the law regarding the special circumstance allegation was unsettled and may have required proof of intent to kill. We conclude the trial court correctly interpreted the statute and substantial evidence supports its ruling not to vacate the conviction under section 1172.6, subdivision (d)(2).

We first review the trial court's interpretation of section 1172.6, subdivision (d)(2), de novo and look to the plain language of the statute. (*Lewis, supra*, 11 Cal.5th at pp. 961, 964; *Jones, supra*, 25 Cal.4th at pp. 107–108; *People v. Duchine* (2021) 60 Cal.App.5th 798, 811; *People v. Frausto, supra*, 180 Cal.App.4th at p. 897.)

Although defendant contends a not true finding on the special circumstance allegation requires the court to vacate the conviction under section 1172.6, subdivision (d)(2), "that is not what the statute says." (See *Lewis, supra*, 11 Cal.5th at

18.

p. 964.)  The language in section 1172.6, subdivision (d)(2), is clear when it specifically requires a "prior finding by a court or jury that the petitioner did not act with reckless indifference to human life or was not a major participant in the felony" in order to vacate the conviction.

And, while a jury's not true finding on a section 190.2 special circumstance allegation may necessarily mean the jury found the evidence insufficient to establish defendant was a major participant who acted with reckless indifference, we cannot conclude this is always the case in light of the history of section 190.2.  (See *People v. Strong* (2022) 13 Cal.5th 698, 713 [noting "[o]n its face" § 1172.6, subd. (d)(2) "applies most naturally to situations in which a defendant was charged with a felony-murder special circumstance and the trier of fact found the circumstance not true"].)  The requirements for sustaining a special circumstance finding under section 190.2 have changed over time.  (See generally *People v. Frausto, supra*, 180 Cal.App.4th at p. 897 [courts may consult legislative history in interpreting meaning of statutes].)

In June 1990, California voters approved Propositions 114 and 115, both of which amended section 190.2 in different ways.  (See *People v. Superior Court* (*Clark*) (1994) 22 Cal.App.4th 1541, 1545–1546; *Hoyos, supra*, 41 Cal.4th at p. 890.)  Proposition 114 did not alter former section 190.2's previous requirement that felony-murder aiders and abettors who were not the actual killer had to have the intent to kill to be death eligible.  (See *Banks, supra*, 61 Cal.4th at p. 798 ["as it stood in 1990, state law[, specifically, section 190.2,] made only those felony-murder aiders and abettors who intended to kill eligible for a death sentence"].)  Indeed, "[a]lmost all of the changes presented in Proposition 114 were nonsubstantive."  (*Yoshisato v. Superior Court* (1992) 2 Cal.4th 978, 983 (*Yoshisato*).)  On the other hand, Proposition 115 made a number of substantive changes to section 190.2.  (*Yoshisato, supra*,  at p. 985.)  Relevant here, it amended section 190.2 by making death eligible aiders and abettors who were not the actual killer but who acted "'with reckless indifference to human life and as a major participant'" in

19.

the commission of certain felonies that resulted in death. (See *Yoshisato, supra*, at pp. 986–987; accord, § 190.2, subd. (d).)

The California Constitution, article II, section 10, subdivision (b), reads: "If provisions of two or more measures approved at the same election conflict, the measure receiving the highest number of affirmative votes shall prevail." Since Proposition 114 received more votes than Proposition 115, it was clear Proposition 114 was effective, but it was unclear whether Proposition 115 was also operative. (See *Yoshisato, supra*, 2 Cal.4th at p. 981.) Accordingly, the dual passage of these initiative measures "spawned litigation that challenged whether Proposition 115's amendments to section 190.2 were effective." (*Hoyos, supra*, 41 Cal.4th at p. 890; see *People v. Superior Court* (*Clark*), *supra*, 22 Cal.App.4th at p. 1551 ["[t]here were two different versions of section 190.2 on the books"].)[8]

On October 24, 1991, the California Supreme Court granted review in *Yoshisato* to determine whether, and to what extent, the amendments made by Proposition 115 should be given effect. (*Yoshisato, supra*, 2 Cal.4th at p. 981.) The *Yoshisato* court settled the issue on June 25, 1992, by finding that the two propositions were not competing or alternative measures, but complementary or supplementary amendments to section 190.2. (*Yoshisato, supra*, at pp. 989, 992.) Therefore, the *Yoshisato* court concluded that all of Proposition 115's substantive amendments to section 190.2 were effective. (*Yoshisato, supra*, at pp. 981, 992.)

In light of this backdrop and the plain language of section 1172.6, subdivision (d)(2), we cannot conclude the trial court erred in concluding that the not true

---

[8]    In *People v. Superior Court* (*Clark*), the Fourth District (Div. Three) noted in its previously published opinion that was superseded by *Yoshisato*, it had held that "because Proposition 114 had garnered more votes than Proposition 115, Proposition 115 (and its rendition of … section 190.2) never became operative." (*People v. Superior Court* (*Clark*), *supra*, 22 Cal.App.4th. at pp. 1545–1546.) That opinion was filed on August 5, 1991 and became final as to that court on September 4, 1991. (*Id*. at p. 1546.)

finding on the special circumstance allegation did not entitle defendant to summary relief under section 1172.6, subdivision (d). This is because, before the California Supreme Court clarified the state of the law regarding section 190.2 in *Yoshisato*, it is possible a jury could have been instructed, and thus rendered its findings, based on the language of former section 190.2 that required an aider and abettor to have acted with the intent to kill in order to be death eligible. In such a case, the lack of a true finding on the special circumstance allegation would not mean the jury necessarily found the defendant was not a major participant who acted with reckless indifference to human life. Thus, we cannot conclude as a matter of law a not true finding on a section 190.2 special circumstance allegation on its own, at the time defendant was convicted, establishes a defendant is summarily entitled to relief as a matter of law.

"[S]ection [1172.6], subdivision (d)(2) applies only when a fact finder has made an affirmative finding of innocence on the elements of major participant and reckless indifference, akin to a finding of factual innocence." (*People v. Harrison* (2021) 73 Cal.App.5th 429, 439–440.) The trial court's determination that the jury's finding on the special circumstance was "not dispositive of the petition under [section 1172.6, subdivision ](d)(2)" is a factual determination we review for substantial evidence. (See *People v. Perez* (2018) 4 Cal.5th 1055, 1066 ["the trial court's eligibility determination, to the extent it was 'based on the evidence found in the record of conviction,' is a factual determination reviewed on appeal for substantial evidence."]; accord, *People v. Williams, supra*, 57 Cal.App.5th at p. 663 ["""we review the factual findings for substantial evidence"""]; *People v. Clements* (2022) 75 Cal.App.5th 276, 298 ["We review the trial judge's factfinding for substantial evidence."].)

We initially acknowledge that the *Yoshisato* decision issued after defendant was already convicted and sentenced in this case. Consequently, we agree with the People that the law regarding a special circumstance under section 190.2 was "unsettled" at the time defendant was convicted and sentenced. (See *Hoyos, supra*, 41 Cal.4th at p. 890

21.

["the state of the law during the two-year period [from 1990 to 1992] was that it was 'unsettled,'" though *Yoshisato* was not "'unexpected'" or "'unforeseeable'"].)

Further, the record does not contain the jury instructions. Without the jury instructions, the record is unclear whether the jury was instructed on and found the special allegation untrue based on the intent to kill language or under the major participant and reckless indifference language.

Notably, the record contains the jury's verdict form, which reflects, in relevant part, the following language with regard to the special circumstances allegation:

> "WE FURTHER FIND TO BE <u>Not true</u> the alleged special circumstance of Count One, that the murder of Xiong Lee was committed by the defendant, with the intent to kill, while the defendant was engaged in the attempted commission of the crime of Robbery, in violation of … sections 664/211."

Accordingly, the verdict form only reflects the jury found defendant did not act with the intent to kill, as section 190.2 required before Proposition 115's amendments. The form does not establish the jury found not true that the defendant was a major participant who acted with reckless indifference to human life. Although the language on the verdict form is not always dispositive because the findings reflected by that verdict form are a product of the """"the issues submitted to the jury and the instructions of the court"""" (*People v. Jones* (1997) 58 Cal.App.4th 693, 710), "a verdict form may not state principles 'contrary to the instructions given'" (*People v. Ochoa* (1998) 19 Cal.4th 353, 427, as modified Jan. 27, 1999).

Viewing the evidence in the light most favorable to the court's order, we conclude substantial evidence supports the trial court's determination that the jury's finding on the special circumstance was "not dispositive of the petition under [section 1172.6, subdivision ](d)(2)."

## 2.    Section 1172.6, Subdivision (d)(3)

Defendant further contends that even if the trial court did not err in denying summary relief under section 1172.6, subdivision (d)(2), the court applied the wrong standard of review at the evidentiary hearing.  He contends "the trial court … erred in assessing whether the newly required elements of felony murder were proven at trial, as opposed to determining whether the jury reached its murder verdict based on a theory that is currently legally valid."  He asserts, the "correct standard is not whether the court, itself, believes there is proof beyond a reasonable doubt of [defendant's] guilt under a still-viable theory of murder," but rather "whether the jury actually rested its verdict on a still-viable theory of murder."  Defendant concedes the court "acted as [an] independent fact-finder and concluded that [he] was a major participant who acted with reckless indifference to human life."  However, he argues, "[b]ecause the record does not show, beyond a reasonable doubt, that the jury based its murder verdict on grounds which remain valid today, this court must reverse the trial court's ruling."  Alternatively, defendant argues the trial court's findings at the evidentiary hearing are not supported by substantial evidence.  The People contend there was a conflict of authority regarding the proper standard of proof for a section 1172.6, subdivision (d)(3) hearing.  They argue that regardless of the correct standard, the trial court employed the "higher standard" and sat as an independent factfinder at the evidentiary hearing, and its decision was supported by substantial evidence.  Because we cannot conclude the trial court applied the correct standard at the evidentiary hearing, we conclude remand is necessary on that basis.

Originally, section 1170.95, subdivision (d)(3), stated, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (Stats. 2018, ch. 1015, § 4, subd. (d)(3), p. 5.)  Appellate courts were initially split over the showing necessary for the prosecutor to carry this burden in

assessing if the beyond a reasonable doubt standard had been met.  (See *People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).)

The majority of courts concluded the trial court was to act as an independent factfinder and determine whether the defendant is guilty of murder under the amended laws beyond a reasonable doubt.  (See e.g. *People v. Fortman* (May 13, 2021) B304567, review granted July 21, 2021, judg. vacated and cause remanded for further consideration in light of Sen. Bill No. 775,[9] S269228; *People v. Clements* (Feb. 4, 2021) E073965, review granted Apr. 28, 2021, judg. vacated and cause remanded for further consideration in light of Sen. Bill 775, S267624; *People v. Rodriguez* (Dec. 7, 2020) B303099, review granted Mar. 10, 2021, judg. vacated and cause remanded for further consideration in light of Sen. Bill 775, S266652; *People v. Lopez* (Oct. 30, 2020) H047254, review granted Feb. 10, 2021, judg. vacated and cause remanded for further consideration in light of Sen. Bill 775, S265974.)  Whereas, in *People v. Duke*, the court held the prosecution just had to prove "beyond a reasonable doubt that the defendant *could* still have been convicted of murder under the new law," "essentially identical to the standard of substantial evidence test …."  (See *People v. Duke* (Sept. 28, 2020) B300430, review granted Jan. 13, 2021, opn. ordered nonpub. Nov. 23, 2021, S265309 (*Duke*).)

The California Supreme Court's order granted review in *Duke* to consider whether "the People [can] meet their burden of establishing a petitioner's ineligibility for resentencing under … section [1172.6], subdivision (d)(3) by presenting substantial evidence of the petitioner's liability for murder under … sections 188 and 189 as amended by Senate Bill No. 1437 (Stats. 2018, ch. 1015), or must the People prove every element of liability for murder under the amended statutes beyond a reasonable doubt?"  (See *Duke, supra*, B300430.)  In November 2021, the California Supreme Court

---

[9]     Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775 or Sen. Bill 775).

24.

transferred *Duke* back to the Court of Appeal "with directions to vacate its decision and reconsider the cause in light of Senate Bill No. 775 (Stats. 2021, ch. 551)."

Senate Bill 775 amended former section 1170.95, subdivision (d)(3), to clarify that the prosecution's burden of proof at the evidentiary hearing is "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder … under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  The new legislation expressly provides, "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."  (See former § 1170.95, subd. (d)(3).)  Consequently, "[t]he Supreme Court's vacation of *Duke* and the Legislature's recent amendment to section [1172.6] resolve[d] [the] split now requiring the trial court, acting as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder.  (*Garrison, supra*, 73 Cal.App.5th at p. 745, fn. omitted.)

Accordingly, we reject defendant's assertion the court should have applied a different third standard, "akin to the *Chapman*[10] standard of harmless error," at the evidentiary hearing.  Put differently, defendant's claim that the court should have determined "if the record shows, beyond a reasonable doubt, that the jury convicted the defendant 'under a still-valid theory' of murder" is without any merit.  Defendant concedes no published cases have endorsed this standard of review in a section 1172.6, subdivision (d)(3), hearing.[11]  Ultimately, defendant's proffered standard of review was

---

[10] *Chapman v. California* (1967) 386 U.S. 18, 24.

[11] Notably, this standard of review was considered by the Second District Court of Appeal in *Rodriguez*, and it was ultimately rejected.  (See *Rodriguez, supra*, B303099.)  As the *Rodriguez* court reasoned, this standard runs contrary to the statutory scheme in three ways: "First, the harmless error line of cases requires courts to inquire whether 'there is a basis in the record to find that the verdict was based on a valid ground.'  [Citation.]  That backward looking evaluation is inconsistent with section [1172.6], subdivisions (a)(3)'s and (d)(3)'s explicit

rejected by the Legislature's amendment to section 1172.6, subdivision (d)(3), clarifying the correct standard to be applied at the evidentiary hearing.

However, we also cannot conclude the court applied the correct standard below. While it is clear the court considered the facts of the case in rendering its order, the record is not explicit as to whether the court, sitting as an independent factfinder, ultimately concluded *beyond a reasonable doubt that defendant is guilty of murder* under the amended laws. Indeed, as discussed, the court described its approach to the hearing as follows: it would "focus on the application" of the facts of this case to the factors enumerated in *Tison* and *Enmund* "and the other cited cases within it to determine whether [defendant] *could be found guilty of murder under the new law* taking effect on January 1 of 2019, specifically, was he a major participant, and did he act with reckless indifference to human life?" (Italics added.) This statement suggests the court concluded defendant *could be found guilty* of murder under the new laws as opposed to concluding the prosecution proved, beyond a reasonable doubt, that defendant is guilty of murder under the amended laws, as required. Indeed, the court's exchange with defense counsel

---

direction to the court to determine if the petitioner could now be convicted of murder under sections 188 and 189 as amended, not whether he or she was, in fact, convicted of murder under a still-valid theory. Second, subdivision (d)(3) permits both parties to present new or additional evidence at the hearing after issuance of the order to show cause. If the superior court's ineligibility ruling may be based on evidence not heard by the original trier of fact, the Legislature cannot have intended the court simply to evaluate the grounds on which the original verdict was reached. Finally, section [1172.6] is available to defendants convicted of murder following a plea in lieu of a trial. Given the limited record in many of those cases, it would be impossible to assess whether a still-valid ground for a murder conviction existed, let alone to determine beyond a reasonable doubt that the valid ground was the basis for the plea. Yet section [1172.6] contemplates the same procedure to determine ineligibility in plea cases as in cases in which the murder conviction was reached at trial." (*Ibid.*)

While *Rodriguez* was subsequently vacated and deemed not citable after the matter was transferred back by the California Supreme Court for reconsideration in light of the passage of Senate Bill 775, its prior reasoning rejecting the proposed standard is persuasive and provides further support for our decision to decline to adopt defendant's proposed harmless error standard for determining ineligibility under section 1172.6, subdivision (d)(3).

26.

at the initial hearing also evidences that this was the court's understanding regarding the applicable standard at the hearing.

The court's subsequent statements also did not clarify the standard it ultimately employed. Rather, the court acknowledged the conflicting standards of review proposed by the parties and proceeded to discuss the facts of the underlying case in the context of the relevant factors discussed in case law and the jury instructions, using the revised CALCRIM for guidance. The court stated: "the only reasonable conclusion is that [defendant] was in fact a major participant in the robbery or attempted robbery." In considering the reckless indifference element, the court discussed the factors from *Banks* and *Clark* as set forth in the CALCRIM instructions and concluded defendant was too intricately involved and connected to the events to be granted relief under section 1172.6. It found defendant qualified "as a major participant who acted with reckless disregard to human life." Significantly, the court omitted, in reaching its decision, language that it determined beyond reasonable doubt that defendant is guilty of murder under a still valid theory. (See *Garrison, supra*, 73 Cal.App.5th at p. 745.)

A trial court abuses its discretion if its decision is based on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156–158 [court abused its discretion in granting motion for new trial based on erroneous legal standards]; see generally *In re Charlisse C.* (2008) 45 Cal.4th 145, 160–161, 167 [juvenile court abused discretion in applying incorrect standard in disqualifying minor's counsel].) And Senate Bill 775's amendments to section 1172.6 make clear that a finding of substantial evidence to support a murder conviction under the amended laws is insufficient to establish a petitioner's ineligibility for relief. (See *id.*, subd. (d)(3) ["A finding that there is substantial evidence to support a conviction for murder … is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."].)

Because we cannot conclude the court applied the correct standard at the evidentiary hearing, we conclude remand is required. Defendant is entitled to a hearing

27.

at which the prosecutor bears the burden to prove beyond a reasonable doubt that he is guilty of murder under a theory still valid under California law. And, even if we were to evaluate whether the trial court's use of an improper standard of proof constituted harmless error, we cannot conclude the current record establishes what the outcome of a properly conducted evidentiary hearing would be. Thus, we cannot conclude the error was harmless.

Accordingly, we reverse the court's order and remand for the trial court to reconsider defendant's eligibility for relief applying the correct legal standard. (See *People v. Knoller, supra*, 41 Cal.4th at pp. 158–159 [reversing grant of motion for new trial where it was "uncertain whether the trial court would have reached the same result using correct legal standards" and remanding for reconsideration]; accord, *In re Charlisse C., supra*, 45 Cal.4th at pp. 160, 167 [where court applied incorrect standard in disqualifying minor's counsel, prudent course is to remand for rehearing where parties may present additional evidence]; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [trial court's order "based upon improper criteria or incorrect assumptions calls for reversal '"even though there may be substantial evidence to support the court's order"'"].) We further note, in supplemental briefing, defendant also contends he is entitled to a new evidentiary hearing under section 1172.6, subdivision (d)(3), based on clarifications regarding the admissibility of evidence at the hearing as a result of the passage of Senate Bill 775. Because we are vacating the order denying the petition and remanding for a new hearing, we need not address this issue here since the new rules regarding admissibility of evidence will apply at the new hearing.

**DISPOSITION**

We reverse the order denying the petition for resentencing and remand the matter to the trial court for a new section 1172.6, subdivision (d)(3), hearing applying the correct standard of review under the new law.

MEEHAN, J.

WE CONCUR:


SMITH, Acting P. J.


SNAUFFER, J.